GENERAL MOTORS CORPORATION *v.* UNEMPLOYMENT
COMPENSATION COMMISSION.

CLAIM OF GIELDA.

1. Unemployment Compensation—Labor Agreement—Payment
for Holidays.

　An agreement between employer and union of its employees where-
in provisions are incorporated which relate to payment for
specified holidays under certain conditions must be considered
in applying statute relative to eligibility for payment of bene-
fits under the unemployment compensation act, where a holiday
specified under the agreement fell during a week in which some
employees were otherwise employed 1 day and others not ·at all
(CL 1948, §§ 421.27[c–1], 421.44, 421.48a).

2. Same—Holiday Pay—Labor Agreement—Remuneration—Par-
tial Benefit Rate.

　Holiday pay, received by claimants for unemployment compensa-
tion benefits for Christmas day pursuant to contract between
employer and labor union, as bargaining agent for its employ-
ees, constituted remuneration for such day and rendered em-
ployees who were not otherwise employed during such week
entitled to but half their full weekly benefit rate and those who
were otherwise employed 1 day, not entitled to any unemploy-
ment compensation, since the holiday pay was received as an
emolument incident to the employee's status during the week
including the particular holiday for which pay was received
(CL 1948, §§ 421.27[c–1], 421.44, 421.48a).

3. Same—Remuneration—Payment for Command of Employees'
Time.

　"Remuneration," as the term is used in the unemployment com-
pensation act, includes payments made by an employer for his

References for Points in Headnotes

[1–3] 48 Am Jur, Social Security, Unemployment Insurance, and
Retirement Funds § 34.

command of an employee's time as well as for current effort, notwithstanding contrary contention made because of provisions relating thereto in contract between employer and labor union, as bargaining agent for claimants (CL 1948, §§ 421.27 [c–1], 421.44, 421.48a).

Appeal from Ingham; Salmon (Marvin J.), J. Submitted June 5, 1951. (Docket No. 8, Calendar No. 44,983.) Decided October 1, 1951.

Certiorari by General Motors Corporation to review an order of the Appeal Board of the Michigan Unemployment Compensation Commission affirming a referee's award of unemployment compensation. Order reversing decision of the Appeal Board. The Michigan Unemployment Compensation Commission appeals. Affirmed.

*Henry M. Hogan (E. V. Gilliland,* of counsel), for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *George M. Bourgon,* Assistant Attorney General, for the Michigan Unemployment Compensation Commission.

*Zwerdling & Zwerdling,* for claimants.

NORTH, J. The 317 defendant-claimants, whose rights to unemployment compensation are herein involved, were full-time hourly employees of the General Motors Corporation in its plants located in the Saginaw-Bay City area. The corporation's 1948 annual inventory, pursuant to posted notices, was taken during the week ending December 25th. During that week there was one day's employment for 77 of these claimants, but no employment for 240 of them. All of claimants returned to work on Monday, December 27th, when normal production and employment were

resumed.  On December 30, 1948, payday, each claimant was paid his regular wages for 8 hours straight time as and for his Christmas "holiday pay," pursuant to sections 138 to 143, inclusive, of an agreement dated May 29, 1948, between the corporation and the UAW-CIO, as bargaining agent for claimants.   Section 86 of that agreement provided for double-time payment to employees who work on Christmas days.  Right to full unemployment compensation for the week of the inventory layoff is sought by 240 of the claimants, but resisted by the employer corporation.  The sole question presented is:

"Did claimants earn remuneration with respect to the week ending December 25, 1948, within the meaning of section 27(c-1) of the Michigan unemployment compensation act* by virtue of having received 'holiday pay' pursuant to sections 138 through 143 of the agreement between General Motors Corporation and the UAW-CIO dated May 29, 1948."

The referee and the appeal board held that with respect to the week ending December 25, 1948, these claimants earned no remuneration within the meaning of the statutory provisions, notwithstanding they received "holiday pay" for December 25th, included in the pay each received December 30, 1948; such payment being in accord with the agreement of May 29, 1948, entered into between the corporation and the UAW-CIO as claimants' bargaining agent.

In accord with statutory procedure the controversy finally reached the circuit court of Ingham county, which reversed the decision of the appeal board of the Michigan unemployment compensation commission.  The circuit court held that by receipt of "holiday pay" for December 25, 1948, the claimants herein did receive to that extent remuneration

*CL 1948, §421.27(c-1) (Stat Ann 1947 Cum Supp § 17.529 [c-1]).

during the week ending December 25, 1948. We quote the following from the opinion of the circuit judge:

"Was the decision of the appeal board contrary to law in holding that claimants did not earn remuneration with respect to the week ending December 25, 1948, by virtue of receiving holiday pay for December 25, 1948, pursuant to the holiday pay section of the 1948 agreement. * * *

"First, it seems to this court that the remuneration the claimants received from the Corporation was for meeting the eligibility rules under the contract, which in part at least require personal services and hence it amounts to remuneration within the * *̇* (statutory) definition.

"Next then we come to the query, When did the claimants earn the remuneration. While they performed the services to earn it in part by working the last scheduled work day before the holiday and the first scheduled work day after the holiday and at other times and in other ways, *nevertheless by agreement they have designated that it was earned for December 25th.* The parties are bound by the agreement, which is clear and unambiguous in this respect.

"In this court's opinion * * * this case is confined to and controlled by the contract we have before us, and it in effect says that the remuneration is for Christmas day."

In reaching the foregoing conclusion the circuit judge noted the following statutory provisions embodied in the unemployment compensation act, CL 1948, § 421.1 *et seq.* (Stat Ann 1947 Cum Supp § 17.-501 *et seq.*):

"Sec. 27. (c–1) * * * Each eligible individual* shall be paid his full weekly benefit rate with respect to the week in which he has earned no remuneration or remuneration equal to less than $\frac{1}{2}$ his primary weekly benefit rate, or shall be paid $\frac{1}{2}$ his full weekly

---

*Eligibility of each of the 240 claimants is admitted.

benefit rate with respect to the week in which he has earned remuneration equal to at least ½ but less than his primary weekly benefit rate." CL 1948, § 421.27 (Stat Ann 1947 Cum Supp § 17.529).

"Sec. 48a.   *   *   *   An individual shall be deemed 'unemployed' with respect to any week during which he performs no services *and with respect to which no remuneration is payable to him,* or with respect to any week of less than full-time work if the remuneration payable to him is less than his primary weekly benefit rate." CL 1948, § 421.48a (Stat Ann 1947 Cum Supp § 17.552 [1]).

"Sec. 44. 'Remuneration' means all compensation paid for personal services, including commissions and bonuses and the cash value of all compensation payable in any medium other than cash." CL 1948, § 421.44 (Stat Ann 1947 Cum Supp § 17.548).

As was held by the circuit judge, the agreement of May, 1948, is a factor which must be considered in reaching decision in the instant case. In part and insofar as is pertinent to decision herein, this agreement between the corporation and certain of its employees, including claimants herein, acting through their bargaining agent, UAW-CIO, under the heading "holiday pay" provides (emphasis supplied):

"Hereafter, hourly rated employees shall be paid for   *   *   *   Christmas day holidays (and certain other holidays) providing they meet all of the following eligibility rules, unless otherwise provided herein (which eligibility as before noted is admitted as to these claimants).   *   *   *
"Employees with the necessary seniority who have been laid off in a reduction of force, or who have gone on sick leave during the work week prior to or during the week in which the holiday falls *shall receive pay for such holiday.*   *   *   *
"Employees eligible under these provisions *shall receive eight hours' pay* at their regular straight time

hourly rate (subject to certain exceptions and provisions not here material).    *    *    *

"Employees whose work is in necessary continuous 7-day operations as covered by paragraph (87) of the national agreement shall receive *holiday pay* in the event the holiday falls on one of their regularly scheduled days off, and they meet the other eligibility requirements of this procedure for *paid holiday time.*
*    *    *

"In applying this procedure, when any of the above-enumerated holidays fall on Sunday and the day following is observed as the holiday by the State or Federal government, *it shall be paid as such holiday.*"

Decision herein will turn upon whether the "holiday pay" provided for in the May, 1948, agreement and received by claimants, constitutes "remuneration" earned for services with respect to the week ending December 25, 1948. The claimant-employees' contention is that, notwithstanding they received "holiday pay" for Christmas day, 1948, nonetheless during that week they (excepting the 77 who had one day's employment) earned no compensation for personal services; and that under section 27(c–1) of the statute above quoted each of these claimants is entitled to be paid "his full weekly benefit rate" for the week ending December 25, 1948. In making this contention appellant and claimants take the position that the pay received by the claimants for the 1948 Christmas day was not earned "remuneration" or wages which accrued to the claimants during the particular week in question, and that such pay should be excluded in determining unemployment benefits due the respective claimants. If, as appellant and defendant-claimants contend, "holiday pay" received by the claimants was not "remuneration" earned with respect to the week in question, the 77 employees who worked 1 day are entitled to $\frac{1}{2}$ the full weekly

benefit rate in determining their right to unemployment compensation, and the 240 claimants are entitled to the full weekly benefit rate. But on the contrary, if such "holiday pay" was "remuneration" for services of claimants with respect to said week, the 240 defendant-claimants, under section 27 (c–1), above quoted, are entitled to only ½ of the "full weekly benefit rate" provided in the unemployment compensation act; and the other 77 claimants who worked one day during said week and received pay therefor and also the "holiday pay" would not, under the cited section, be qualified to receive any unemployment compensation.

We are in accord with the holding of the circuit judge to the effect that "holiday pay" received by claimants under their contract pertaining to their employment must be held to be "remuneration" (part of their earnings or wages) for services rendered the employer; and that such "remuneration" was with respect to the employment of claimants during the week ending December 25, 1948.

Payment of the holiday money received by the employees under their contract is provided for under the heading "holiday pay," and uniformly designated in the agreement as "pay." Pay for what? Obviously as an "emolument" or compensation for the duties and relation the employees assumed incident to their employment. Under the circumstances of the instant case, the employees are not only required to perform actual personal services on regular work days, but they must hold themselves in readiness to report for work not only on the days of regular employment but also on holidays on notice by their employer.

And further, under the contract involved in the instant case, to be qualified for "holiday pay" the employees, if work were available, had to be ready to work both on the work day next before and the

work day next after the holiday. Hence, eligibility to unemployment compensation required some service "with respect to the week" of the holiday as provided in the May, 1948, contract upon which claimants rely. This conclusion is justified by the following provision of eligibility included in the contract:

"The employee must have worked the last scheduled work day prior to and the next scheduled work day after such holiday within the employee's scheduled work week."

If prior to the day next preceding the holiday an employee's death occurred, or if he were lawfully severed from his employment, obviously "holiday pay" would not be payable to him or his estate. Hence it seems quite clear that money received as "holiday pay" is an emolument received by the employee incident to his status as such during the week of the particular holiday for which pay is received.

We do not think, as appellant and claimants assert, that it is essential that actual personal services should be rendered by the employee to justify the conclusion that "holiday pay" is an emolument earned during the holiday week. As used in the contract the expression "pay" does not under all circumstances imply that the money so received by an employee is for personal services actually rendered. For example, under the heading "call-in pay" the contract provides: "Any employee called to work or permitted to come to work without having been properly notified that there will be no work, shall receive a minimum of 4 hours' *pay* at the regular hourly rate."

The precise issue herein presented has not previously been passed upon by this Court; but at least somewhat in the same field of the law we note the following decisions from other jurisdictions. While the issue adjudicated by the United States

supreme court in *Social Security Board* v. *Nierotko,* 327 US 358 (66 S Ct 637, 90 L ed 718, 162 ALR 1445), is not identical with that in the instant case, and was governed by Federal law, it definitely has to do with a related phase of the law and we deem that decision in harmony with our conclusion herein. The Federal case involved the question of whether the pay an employee would have earned during the period he was unlawfully severed by his employer from his employment, and which as "back pay" the employer was subsequently required to pay the employee, who during the period involved rendered no actual personal services, should be held to be "wages." In holding such "back pay" was in law "wages," in its opinion the United States supreme court said:

"An employee under the social security act is not specifically defined but the individual to whom the act's benefits are to be paid is one receiving 'wages' for 'employment' in accordance with section 210(c) and employment is service by an 'employee' to an 'employer.' * * *

"While the legislative history of the social security act and its amendments or the language of the enactments themselves does not specifically deal with whether or not 'back pay' under the labor act is to be treated as wages under the social security act, we think it plain that an individual, who is an employee under the labor act and who receives 'back pay' for a period of time during which he was wrongfully separated from his job, is entitled to have that award of back pay treated as wages under the social security act definitions which define wages as 'remuneration for employment' and employment as 'any service * * * performed * * * by an employee for his employer. * * * Surely the 'back pay' is 'remuneration.' * * *

"We think that 'service' as used by Congress in this definitive phrase means not only work actually

done but the entire employer-employee relationship for which compensation is paid to the employee by the employer."

A footnote here appended to the court's opinion reads: "For example the social security board's regulations No. 3 in considering 'wages' treats vacation allowances as wages. 26 CFR, 1940 Supp, 402.227 (b)." In the United States supreme court opinion from which we have just above quoted, the court affirmed the decision in *Nierotko v. Social Security Board* (CCA), 149 F2d 273, in which the circuit court of appeals said:

"Wages are not, however, always earned by the expenditure of physical or mental effort on the part of the employee. This the board recognizes when it includes within the term 'wages,' vacation pay, sick and disability pay, pay while on State national guard duty, retainer fees to consultants, et cetera. * * *. Instances may be multiplied where wages are paid not for current effort but in consideration of an employer's command of the employee's time, and wages are no less earned when an employee holds himself in readiness to perform, than when he actually performs."

In a concurring opinion in the United States supreme court case from which we have above quoted, Mr. Justice Frankfurter said:

"The decisions of this court leave no doubt that a man's time may, as a matter of law, be in the service of another though he be inactive. *E. g., Armour & Co. v. Wantock,* 323 US 126 (65 S Ct 165, 89 L ed 118). This is, practically speaking, the ordinary situation of employment in a 'stand-by' capacity. *United States v. Local 807,* 315 US 521, 535 (62 S Ct 642, 86 L ed 1004). The basis of a back-pay order * * * is precisely that. * * * Since such compensation is in fact paid as wages, it is a plain dis-

regard of the law   *   *   *   not to include such payments among the employees' wages."

*In re B. H. Gladding Co.,* 120 F 709, the allowance of a claim in a bankruptcy proceedings was under consideration by the court. Section 64b of the bankruptcy act gave priority to " 'wages due to workmen   *   *   *   which have been earned within 3 months before the date of the commencement of (bankruptcy) proceedings.' "   The court held that 2 weeks' vacation pay to an employee was wages earned during the period covered by the vacation and within the priority.   The court said:

"To attempt distinctions between wages due which are earned and wages due which are not earned, by an inquiry into the amount of work done by the wage earner, would be entirely impractical.   If we disallow claims for a week's vacation, we must also disallow claims for half days when stores are closed, and for days and hours when there is nothing to do. Wages are 'earned,'   *   *   *   so long as a bona fide contract of hiring exists, and the clerk or servant continues in the master's employment and does all that he is required to do.   *   *   *   By continuing the relation of employer and employee during a dull season, the employer holds his working force in readiness for the active season.   The relation of the employer and employed is as strictly a business relation as it is during the working season, and there is full legal consideration for the master's promise to pay wages during this period."

In arriving at our conclusion herein we have been mindful of the reasons assigned in the briefs in behalf of appellant and defendant-claimants in support of the contention that receipt of "holiday pay" by the employees did not constitute "remuneration" to the employees with respect to the week ending December 25, 1948.   Among such reasons it is urged that since "holiday pay" is treated in the May, 1948,

agreement under a separate heading and wholly apart from the provisions in the contract headed "wages," it follows that "holiday pay" is not "wages" or "remuneration" for services. At most this is only an inference based upon the manner in which the very numerous provisions of the May, 1948, agreement are embodied therein. To the same extent and in a similar manner other provisions of the contract which are akin to compensation received by the employees are treated wholly and apart from the heading of "wages." This is true, for example, of pay received by the employees for overtime, and for pay received by them for services rendered on holidays, but it could scarcely be said that such compensation to the employee is not "wages" merely because it is not included under the heading "wages" in the contract. We are not in accord with the contention, just above noted, of appellant and claimant-employees. Instead, it seems obvious that the provisions for "holiday pay" in the agreement are under a separate heading for orderliness and clarity of the provisions of the contract, which is very much in detail and covers over 90 pages of the closely-printed pamphlet inserted in the record.

Contrary to the various arguments presented by appellant and claimant-employees, which we have carefully considered, we are of the opinion that the circuit judge arrived at the right result. The judgment entered in the circuit court is affirmed, with costs to plaintiff.

REID, C. J., and BOYLES, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.

BUTZEL, J., did not sit.