No. 39,481

CLINTON ERICKSON et al., S. S. No. 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, Claimants and *Appellants,* v. GENERAL MOTORS CORPORATION, BUICK-OLDSMOBILE-PONTIAC DIVISION, Kansas City, Kansas, Employer, and P. G. BAIRD, State Labor Commissioner, State of Kansas Labor Department, Employment Security Division, *Appellees.*

(276 P. 2d 376)

Opinion filed November 13, 1954.

*Harry C. Clark*, of Kansas City, Missouri, argued the cause, and *James H. Barnes*, of Kansas City, Kansas, was with him on the brief for the appellants.

*John Murphy*, of Kansas City, Missouri, argued the cause, and *Thomas M. Van Cleave, Jr.*, of Kansas City, Kansas, was with him on the brief for the appellee General Motors Corporation.

*Lynn D. Smith*, of Topeka, argued the cause and was on the brief for the appellee P. G. Baird, State Labor Commissioner.

The opinion of the court was delivered by

THIELE, J.: This appeal arises out of a proceeding originally commenced by employees for benefits allegedly due under the "employment security law" which was originally enacted as Laws 1937, ch. 255. Various amendments were made to the act and as it then existed it appears as G. S. 1949, ch. 44, Art. 7. Further amendments were made by Laws 1951, ch. 307 and appear in 1953 Supp., ch. 44, Art. 7. The amendments made in 1951 do not affect the question involved in this case. For brevity such reference as is made hereafter to particular sections of the act as it now exists will be only by chapter and section number and will refer to the latest enactment of the law as it appears in the Statutes of 1949 or the 1953 Supplement, as the case may be.

The plaintiff Clinton Erickson was an employee of General Motors Corporation, Buick-Oldsmobile-Pontiac Division at Kansas City, hereafter referred to as the corporation. Under circumstances set out later, he did not work during the week commencing December 24, 1951, and ending December 29, 1951. He was paid "holiday pay" for Christmas Day, December 25, 1951. Later he made claim to the state labor commissioner, hereafter referred to as the commissioner, for benefits for the full week he did not work under the provisions of 44-709 (*a*), and the examiner designated by the commissioner, 44-709 (*b*), deducted from the benefits the amount of "holiday pay" Erickson had received and allowed his claim as

to the balance. Under 44-709 (*c*), (*d*) Erickson appealed to the appeal tribunal and the appeal was referred to an appeals referee, and at a hearing held before the referee, notice was taken of the fact that many other employees of the corporation were in similar situation and that the referee had suggested the appeal be filed for the benefit of all, and that was agreed. Evidence was taken before the appeals referee, and on June 11, 1953, he filed a written decision in which he found, in part, that:

"On May 29, 1950, an agreement was entered into between General Motors Corporation of which the employer is a part and the UAW-CIO in which claimants, production and maintenance workers, hold membership by virtue of their affiliation with Local 31, UAW-CIO, bargaining unit at the employer's. Such agreement includes, among other things, Sections 138 through 143 titled 'Holiday Pay.' This provides that hourly rated employees be paid for certain named holidays, Christmas included, provided certain eligibility requirements are met, *i. e.*, seniority of 90 days; that they would have otherwise been scheduled to work if the day had not been observed as a holiday, and that the employee work the last scheduled work day prior to and the next scheduled work day after the holiday within his scheduled work week. . . .

"During the week ended December 29, 1951, and because of governmental material restrictions as set out in a combined holiday and lay-off notice, dated December 14, 1951, and posted at employer's plant in the Fairfax District of Kansas City, Kansas, the claimants performed no work. Most of the claimants, with exceptions noted in the individual claims, returned to work on January 2, 1952, and shortly thereafter filed claims for the week ended December 29, 1951. The matter arose when certain officials of the local were advised by the division's Kansas City, Kansas, office that the pay for December 25, 1951, was wages and would be deducted from the weekly benefit amount to which the claimants were otherwise entitled. These officials promptly communicated with the division legal department respecting appeals and it was agreed at that time that one appeal would be perfected and one hearing held for all claimants involved."

The appeals referee further stated in his decision that the one question involved was whether the pay received by claimants for Christmas Day, 1951, was wages as defined in 44-703 (*o*) and if such pay was wages then the provisions of 44-704 (*c*) providing, in substance, that each eligible individual who is unemployed with respect to any week shall be paid with respect to such week in an amount equal to his weekly benefit amount less that part of such wages payable to him with respect to such week, was applicable and each claimant's weekly benefit amount would be reduced by the amount of his Christmas or holiday pay, and he concluded and found that the action of the examiner in finding holiday pay for December 25, 1951, was wages and as such deductible from the

weekly benefit for the week ended December 29, 1951, was correct and that such action should be and it was affirmed.

Conformably to 44-709 ($e$) the claimants appealed to the commissioner and under date of August 4, 1953, he rendered a written decision adopting the findings of fact and conclusions of law made by the appeals referee, as though fully incorporated in his decision and found that the decision of the appeals referee should be affirmed and so ordered.

Within the time fixed by 44-709 ($b$) the claimants as plaintiffs commenced an action in the district court by filing a petition naming the corporation and the commissioner as defendants to secure a review of the decision of the commissioner, and later filed an amended petition to which the commissioner and the corporation filed answers, and a hearing was had thereon. No question has been raised thereon, but in view of the issue presented the corporation, while perhaps a proper party, is not a necessary one. The trial court, in a written opinion, stated it was controlled by 44-709 ($b$) which provides that the findings of the commissioner as to the facts, if supported by the evidence and in the absence of fraud, are conclusive on the court, whose jurisdiction is confined to questions of law; that it was not contended the findings were not supported by the evidence nor was there any claim of fraud, and after some review of the law applicable, concluded that "holiday pay" must be construed as wages and that the decision of the appeal tribunal (state labor commissioner) must be affirmed and on January 12, 1954, it rendered judgment in accord. In due time the plaintiffs perfected an appeal to this court. They specify that the trial court erred in affirming the decision of the commissioner, in finding as a matter of law that holiday pay was compensation for services or wages within the terms of the employment security law, in holding as a matter of law that the holiday pay for Christmas was properly due claimants on December 28, 1951, and in finding that the findings of fact of the commissioner were supported by the evidence.

As presented to this court there is no question of procedure, nor other claim of error other than that of law, the appellants in their brief stating that the sole question is whether the pay they received for Christmas Day, 1951, is "wages" as defined by 44-703 ($o$). And we may add, is deductible in determining benefits due under 44-704 ($c$).

In a preliminary way, it may be stated that at the hearing before

the appeals referee, it was shown that claimants, appellants here, were members of Local 31, UAW-CIO which was the recognized bargaining agent with the corporation, and that all of the claimants, as such members, were governed in their employment by an agreement entered into May 29, 1950, between the corporation and the UAW-CIO, and a copy of that agreement was admitted in evidence. Other documentary evidence admitted consisted of three booklets containing the constitution of the UAW-CIO, supplemental agreement covering pension plan, and supplemental agreements and interpretations of the GM-UAW agreement, as well as copies of correspondence between officers of the corporation and officers of the union. A copy of the holiday and lay-off notice dated December 14, 1951, referred to in the decision of the appeals referee, as above quoted, was also introduced, as was some oral testimony identifying documents admitted. Other oral evidence tended to show and explain the reasons why and the purposes for which the contract of May 29, 1950, was made.

The contentions of appellants later discussed may be more clearly understood and discussed by here taking note of the "employment security law." The act or law is of great length and any comprehensive review of it here is impractical and unnecessary, but as stated in 44-702 its purpose, in part, is to secure social security protection against the hazards of unemployment by the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed. Under 44-712 an employment security fund is to be established, to be administered by the state labor commissioner, the state treasurer to be ex-officio custodian of the fund. By 44-710 employers subject to the act as defined by 44-703 are required to make specified contributions to the fund. By 44-704 provision is made for the payment of unemployment benefits from the fund. In the instant case there is no question but that the corporation and the appellants as its employees are within the terms of the act and that appellants' rights arise only under its provisions and that the claim asserted is against the employment security fund administered by the commissioner and not against the corporation.

Section 44-703 of the employment security act defines many of the words used in the act, and we here take notice of the following:

"(c) 'Benefits' means the money payments payable to an individual, as provided in this act, with respect to his unemployment."

"(i) 'Employment' means any service, subject to the other provisions of this subsection, including service in interstate commerce, performed for wages or

under any contract of hire, written or oral, express or implied." The remaining portions of this definition are not presently of importance.

"(*m*) 'Unemployment.' An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no wages are payable to him, or with respect to any week of less than full-time work if the wages payable to him with respect to such week are less than his weekly benefit amount."

"(*o*) 'Wages' means all compensation for services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash. The reasonable cash value of remuneration in any medium other than cash, shall be estimated and determined in accordance with rules prescribed by the commissioner:   .  .  ."

Following the quoted language it is provided that the term "wages" shall not include certain remuneration and payments not presently applicable. Holiday pay is not mentioned.

Certain words used in the definition of wages in 44-703 (*o*) are not defined in the statute. Rules for statutory construction are set forth in G. S. 1949, 77-201 and under subdivision "Second" words and phrases shall be construed according to context and the approved usage of the language, but technical words and phrases and such others as have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning. Without exhausting the definitions as shown therein, according to Webster's New International Dictionary, second edition, "compensation" is the act of compensating, and in the verb form "compensate" means to make equal return to; to remunerate; to recompense; to give an equivalent to; to requite suitably, as to compensate a laborer for his work. The word "bonus" is defined as something in addition to what is ordinarily received by or strictly due to, the recipient. The word "remuneration" means the act of remunerating and in its verb form means to pay an equivalent for service; to recompense; to pay, as to remunerate a man for his service.

It will be observed that under 44-703 (*m*) an individual shall be deemed unemployed, and therefore entitled to unemployment benefits, for a particular week, only where he performs no service *and* where no wages are payable to him with respect to that week. There is no dispute that appellants did not work during the week of December 24th to December 29th, 1951, nor that they were paid holiday pay for December 25, 1951. Clearly appellants met the first part of the conjunctive requirement, and they met the second part and were entitled to full benefits without reduction, if the

holiday pay they received was not wages with respect to the week. Appellants present their arguments, the gist of which will be set forth, under eight headings.

They first contend that the collective bargaining agreement between the UAW-CIO and the corporation does not classify holiday pay as wages, and our attention is directed to the fact that in the agreement between the provisions as to wages and the provisions as to holiday pay are other provisions dealing with phases of the employment other than wages or pay and that the failure to place the provisions as to wages and as to holiday pay together clearly shows that the parties did not consider holiday pay as wages. This contention is not expanded and no authority in support is cited.

Their second contention is that the general definition of wages does not include holiday pay; that it is impossible to say that the holiday pay was given for labor, as appellants did not perform any labor during the particular week, and that such holiday pay was a "fringe benefit" and not subject to deduction. No authority is cited.

Their third contention is that the union and the corporation have agreed that holiday pay is not wages and attention is directed to correspondence between officers of the union and the corporation, which it is argued supports the contention.

Their fourth contention is that under 44-704 (c) deduction is not permitted unless the compensation is paid with reference to a particular week, that compensation cannot be remuneration for personal services unless it is in consideration of particular specific services at a particular specified period of time, and that the holiday pay in question is not deductible because it is not pay for work on Christmas Day or for any service rendered during that week. No authority is cited.

Under their fifth heading, appellants direct attention to the decision in *General Motors Corp. v. U. C. C.*, 331 Mich. 303, 49 N. W. 2d 305, which the appeals referee mentioned in his opinion, and argue that that case is distinguishable from the instant case because of claimed difference in the status of the employees during the week in which holiday pay was received by the claimants.

Appellants' sixth contention is that holiday pay is not wages under common law rules of construction and the rule of liberal interpretation, the gist of the argument being that because the statutory language "all compensation for services, including commissions and bonuses and the cash value of all remuneration in any

medium other than cash" did not mention holiday pay, such pay is not wages, and if it had been otherwise the legislature should have so stated; that under the maxim that express mention of certain things implies the exclusion of other things, the statutory language shows the legislature did not intend to classify holiday pay as wages, and our attention is directed to *Arends v. Grand Rapids R. Co.,* 172 Mich. 448, 138 N. W. 195, as holding that the rule of construction is that the exception, if any, shall appear in the act. It is further argued the act should be liberally construed in favor of the employees, citing *Auten v. Unemployment Comp. Comn.,* 310 Mich. 453, 17 N. W. 2d 249, and *Copper Range Company v. U. C. C.,* 320 Mich. 460, 31 N. W. 2d 692.

The seventh heading consists of a brief argument on the proposition that many forms of compensation are not wages, and need not be detailed.

The eighth heading refers to the following. At the trial in the district court the defendants filed a motion to strike the plaintiffs' petition. The motion was denied by the trial court and defendants have filed no cross-appeal. We need not notice appellants' comment on the propriety of the ruling.

Appellees have filed a somewhat lengthy brief answering the contentions advanced by appellants, setting forth reasons why they believe the judgment should be affirmed, and directing attention to some of the authorities cited by appellants as not being in point or as being distinguishable as well as to many decisions from other jurisdictions tending to support arguments advanced by them. We find it unnecessary to review all of the authorities presented.

While we shall take up appellants' contentions by specific reference to each of them, it is to be borne in mind that in fact they overlap and therefore there is some duplication in our treatment thereof.

We notice together appellants' first, third and sixth contentions for whether the collective bargaining agreement between the corporation and UAW-CIO of May 29, 1950, does or does not classify holiday pay as wages and whether holiday pay is not wages under common law rules of construction, present a question of construction and interpretation of the agreement and of the statute. We shall not comment on the question of liberal interpretation but content ourselves by saying that employees affected are entitled to a liberal interpretation of the statute.

In view of the issue presented by this appeal, we need not pause to discuss rules of construction applicable to the bargaining agreement or to determine its effects as between the parties to it for concededly appellants were employees entitled to receive holiday pay and they did receive it. We need not discuss the contention that the corporation and the union agreed that holiday pay was not wages for whether that holiday pay is deductible from benefits to be paid out of the employment security fund in the custody of the state treasurer is to be determined, not from the above agreement, but from the statute.

We shall consider together appellants' second contention that the general definition of wages does not include holiday pay, their third contention the parties, *i. e.* the union and the corporation, have agreed that holiday pay is not wages, and their seventh contention that many forms of compensation are not wages. In view of the fact the statute defines wages and that we are bound thereby, it is useless to discuss any dictionary definition that would tend to dispute and contradict the statutory definition. While it would be interesting to review the negotiations leading up to the agreement of May 29, 1950, between the union and the corporation, and to consider whether holiday pay was an essential element of wages or on the contrary was a so-called fringe benefit, either conclusion which might be drawn could neither add to nor subtract from the statutory definition that wages means all compensation for services including commissions and bonuses and the cash value of all remuneration other than cash. We cannot agree that because holiday pay is not mentioned in the statutory definition that it is excluded therefrom especially in view of the fact that the remainder of the subsection defining wages contains a "provided" clause which sets out at length "that the term 'wages' shall not include:" followed by specified payments, which do not include holiday pay. There is no room for application of the maxim upon which appellants rely. It is rather clear that under the employment agreement the employee was to get not only certain hourly wages but if he had been employed a sufficient length of time and worked the last scheduled work day prior to and the next scheduled work day after the holiday within the employee's scheduled work week, he was to get holiday pay. It was a condition of his employment, and he had to work to get it, and he got it as part of his compensation. If that be not true, then the employee received some-

thing to which he was not strictly entitled, a thing ordinarily called a bonus, and if it was a bonus, it was still wages under the statutory definition of wages.

Appellants' fourth contention as set forth above cannot be sustained. The president of the local union, testifying in behalf of the appellants stated that the employees regularly received their pay checks on Friday of each week and that the pay included in that check covered wages earned not for that week but for the preceding week, and that the checks delivered on January 4 were for the preceding week ending December 30 and that they included holiday pay, and if the employee had worked during that week his check would have included the wages earned during that week and the holiday pay. Under the above evidence the appeals referee found, as a fact, that the holiday pay was with respect to the week for which appellants were claiming benefits. The fact being determined, the statute compels deduction.

Referring to appellants' fifth contention we note that in the case there mentioned the Michigan court had before it the question whether holiday pay was wages and deductible from unemployment benefits under a statute and under facts similar to the instant case and held that holiday pay was wages and deductible from unemployment benefits. The claimed distinction is that the appellant employees were definitely released from employment during the week of December 24 while in the case cited they were indefinitely released. We need not determine whether appellants' interpretation of the notice posted by the corporation released them definitely or otherwise, for as has been pointed out elsewhere in this opinion, they did receive holiday pay and we are now concerned only with whether, under our statutes, that pay is deductible from unemployment benefits. It may be remarked, however, that ignoring the claimed distinction, the above Michigan decision supported the conclusions reached by the appeals tribunal.

In view of what has been said, we need not discuss the appellants' seventh contention.

In their brief the appellees have directed our attention to decisions from other jurisdictions arising under similar statutes and involving similar states of fact. Those decisions will not be reviewed and distinctions pointed out for while the most of them are persuasive, they are not controlling on us, for, as has been indicated above, the question for decision is to be determined by our statute.

We have no hesitancy in concluding that, under the undisputed facts, the holiday pay received by the appellants for Christmas Day in 1951 was wages within the statutory definition and paid with respect to the week beginning December 24, and was deductible from unemployment benefits due to appellants for that week and that the judgment of the trial court in so holding was correct.

The judgment of the district court is affirmed.