ANTHONY GEREMIA *v*. ADMINISTRATOR, UNEMPLOY-
MENT COMPENSATION ACT, ET AL.

PHILIP POPPLE ET AL. *v*. ADMINISTRATOR, UNEMPLOY-
MENT COMPENSATION ACT, ET AL.

KING, MURPHY, MELLITZ, SHEA and ALCORN, Js.

Argued February 3—decided March 31, 1959

*William K. Cole,* with whom, on the brief, was *George C. Hastings,* for the defendant Fafnir Bearing Company in the first case.

*Jose M. Calhoun,* for the defendant Royal McBee Corporation in the second case.

*Harry Silverstone,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the named defendant in each case.

*William S. Zeman,* for the plaintiff in each case.

MELLITZ, J. The decisive question presented in these cases is whether holiday pay, so-called, is to be considered earned remuneration in determining whether an employee is partially unemployed under the provisions of § 31-229 of the General Statutes, Revision of 1958 (Rev. 1949, § 7502), and so entitled to receive partial unemployment benefits. The pertinent portion of the statute reads: "An eligible individual who is partially unemployed throughout a week . . . shall be paid with respect to such week

an amount equal to the excess of his benefit rate for total unemployment over the total remuneration of any nature payable to him for services of any kind during such week . . . . An individual shall be deemed to be partially unemployed in any week of less than full-time work in which he has failed to earn remuneration of any nature amounting to at least three dollars more than his benefit rate for total unemployment."

The unemployment commissioner affirmed an award of benefits made by the administrator to each of the plaintiffs. The defendant employer, in each of the cases, appealed to the Superior Court, where, upon stipulation, the questions of law determinative of the appeals were reserved for the advice of this court.

The facts material to a decision are similar in both cases. Each plaintiff was employed as a production worker and was a member of the labor union with which his employer had a collective bargaining agreement. Each agreement provided for holiday pay at regular hourly rates to be given for not more than eight hours, with respect to designated holidays, to employees who were not called in to work on such days. To be entitled to receive holiday pay, an employee had to have worked the full shift on his regularly scheduled workday preceding and following the holiday, except in certain specified contingencies. An employee who failed to report for work on a holiday, when required, and to perform the work assigned was not to receive holiday pay. In the Geremia case, for work on a paid holiday, an employee was entitled to pay computed as though he had not worked, plus double time for hours worked. During the week ending January 4, 1958, Geremia did not work on Monday or Tuesday, December 30

and 31, 1957, when the plant was closed for inventory, nor on Wednesday, January 1, 1958, which was a recognized holiday. On Thursday and Friday, January 2 and 3, he worked eight hours on the regular shift. His gross pay for the week was $50.91, of which $16.40 was holiday pay for New Year's day and $34.51 was for work on January 2 and 3. His weekly benefit rate under the unemployment compensation act was $40. He applied for and was awarded partial unemployment benefits for the week ending January 4, 1958. In the Popple case, an employee required to work on a paid holiday was entitled to be paid for double time and one-half. For the week ending December 28, 1957, Popple received $59.85, of which $29.85 was for hours actually worked, and $30 was for Christmas holiday pay. For the week ending January 4, 1958, he received $59.55, of which $29.73 was for hours actually worked, and $29.82 for New Year's holiday pay. His weekly benefit rate was $40. He applied for and was awarded partial unemployment benefits for the weeks ending December 28, 1957, and January 4, 1958. In each case, in determining the benefits due the plaintiff, the administrator disregarded the amount paid for holiday pay and held that only the amount paid for work actually performed was to be considered earned remuneration within the meaning of § 31-229.

In the view of the administrator, holiday pay is in the nature of a fringe benefit, so-called, which, like vacation pay, the employer pays to compensate the employee for loss of wages. As such, it would be remuneration in the form of compensation for loss of wages within the meaning of § 31-236 (4) of the 1958 Revision, and not remuneration for services, or earned remuneration, within § 31-229. An

individual who seeks unemployment benefits is disqualified and ineligible for benefits, under the provisions of § 31-236 (4), during any week with respect to which he has received or is about to receive remuneration in the form of payment by way of compensation for loss of wages. The legislative purpose in disqualifying such an individual from receiving benefits was to prevent a duplication of benefits to one who is not earning wages during a particular week but is receiving from his employer a payment to make up for the loss. *Zabrowski* v. *Administrator,* 146 Conn. 215, 218, 149 A.2d 310. We have held that a payment of vacation pay made from the employer's resources is a payment of compensation for loss of wages within this statute. *Kelly* v. *Administrator,* 136 Conn. 482, 487, 72 A.2d 54; *Conon* v. *Administrator,* 142 Conn. 236, 246, 113 A.2d 354. The contention of the employers here is that holiday pay is not in the same category but is earned remuneration or wages, within § 31-229, for services rendered by the employee and should be treated as such when the determination of the employee's eligibility for partial unemployment benefits is made.

It is clear from an examination of the contracts here that while there is a similarity between vacation pay and holiday pay in the sense that, to be eligible for such pay, an employee is not required to be physically present and performing work on the employer's premises during the vacation or holiday period, there are requirements connected with the right of an employee to holiday pay which are not applicable in the case of vacation pay and clearly distinguish the two. The contracts contain eligibility requirements which an employee must meet to qualify for vacation or holiday pay. To be eligible for vacation pay, the plaintiff Geremia had to have

been on the company pay roll on July 1 and to have had at least one year of continuous service, and the plaintiff Popple had to have been in the employ of the company on the last Friday of June and actively employed by the company for six months or more. If these eligibility requirements were met the employee was entitled, without more, to receive the vacation pay prescribed in the contract. To be eligible for holiday pay, the plaintiff Geremia had to have at least ninety days of continuous service as of the date of the holiday, and the plaintiff Popple had to have served a three-month probationary period. In addition to these eligibility requirements for holiday pay, both contracts provided that the employee must have worked on his regularly scheduled workday preceding and following the holiday, except in certain specified contingencies, and if called to work on the holiday, must have reported for work and performed the work assigned. To be entitled to receive holiday pay, therefore, an employee, under the contract in each of these cases, had an obligation to do more than merely meet the eligibility requirements as in the case of vacation pay. He was required to perform a service consisting of working on the day before and the day after the holiday and holding himself ready for work on the holiday itself, if required, under the conditions set out in the contract. While the employer agreed to forgo performance by the employee of work on the holiday itself unless it was necessary that the employee be called in for such work, the performance by the employee of the requirements for holiday pay was nevertheless an economic benefit to the employer and the performance of a service in maintaining continuity of production and providing an available source of manpower for work on the holi-

day itself, if the employer's interests required it.

The Unemployment Compensation Act defines "wages" as "all remuneration for employment," and "employment" as "any service . . . performed under any . . . contract of hire creating the relationship of employer and employee." Rev. 1958, § 31-222 (a) (1), (b). "Wages" must, therefore, be taken to mean all remuneration for any service performed in the course of an employer-employee relationship. Here the employees who received holiday pay performed a service for their employers, first, in helping maintain continuity of production by working on the day before and the day after the holiday. It was apparently important to the employers that this service be rendered, otherwise there would be no reason for incorporating the requirement as a condition of the receipt of holiday pay. Again, the employees who received holiday pay performed another service for their employers in holding themselves ready for work on the holiday, if the employers required work to be done on that day. Readiness to serve may be hired, quite as much as service itself. *Armour & Co.* v. *Wantock*, 323 U.S. 126, 133, 65 S. Ct. 165, 89 L. Ed. 118. Wages are no less earned when the employee holds himself in readiness to perform than when he actually performs. *General Motors Corporation* v. *Unemployment Compensation Commission*, 331 Mich. 303, 312, 49 N.W.2d 305. Here one of the services required of the employees, in return for payment to them of holiday pay, was that they hold themselves in readiness to work on the holiday; having done so, they earned their right to holiday pay to the same extent as they earned their right to be paid wages for any other service performed for their employers pursuant to the employers' direction. The holiday pay received by the plaintiffs was

a payment of wages for the service they were required to render and did render to their employers in order to qualify for holiday pay under the provisions of the contracts. It was not a payment of compensation for loss of wages.

Under the collective bargaining agreements, the employers were obligated to pay, and the employees were entitled to receive, wages or remuneration for services performed by the employees. For their regular wages, the service which the plaintiffs were obligated to perform consisted of production work at the times required by the agreements. For their holiday pay, the service which the plaintiffs were obligated to perform, pursuant to the provisions of the same agreements, consisted of helping to maintain continuity of production by working on the day before and the day after the holiday, and in addition, holding themselves in readiness to work on the holiday if called upon to do so. Both regular pay for production service and holiday pay for the service required as a condition of receiving holiday pay were wages or remuneration earned by the employees for services rendered. They were similar in character so far as they represented payment by the employers of remuneration earned by the employees pursuant to the provisions of their employment agreements. The agreement in the case of the plaintiff Geremia gives express recognition to this fact in the provision dealing with the computation of vacation pay. It is there provided: "In computing an employee's average work week and average straight time hourly rate for purposes of vacation pay, the Company will include the hours paid for and the pay received under the holiday pay provisions of the Contract." In other jurisdictions where a similar question has been presented under

contracts containing like provisions, holiday pay has been uniformly held to be remuneration for services rendered to the employer. *General Motors Corporation* v. *Unemployment Compensation Commission,* supra, 309; *In re Weyerhaeuser Timber Co.,* 53 Wash. 2d 235, 332 P.2d 947, 949; *Erickson* v. *General Motors Corporation,* 177 Kan. 90, 98, 276 P.2d 376; *Hill* v. *Review Board,* 124 Ind. App. 83, 87, 112 N.E.2d 218.

The holiday pay received by the plaintiffs is to be treated as remuneration for services during the week in which the holiday fell and with respect to which the payment of holiday pay was made. Cf. *Conon* v. *Administrator,* 142 Conn. 236, 249, 113 A.2d 354.

We answer the questions propounded in the reservations[1] as follows: In the first case, the answer

---

[1] The questions reserved in the first case were: "(a) Was the plaintiff partially unemployed within the meaning of [Rev. 1958, § 31-229] during the week ending January 4, 1958? (b) Did the Commissioner err and mistake the law in disregarding the amount of $16.40 which the plaintiff received as holiday pay in determining the amount of benefits due to the plaintiff for the week ending January 4, 1958? (c) Did the receipt of holiday pay for December 31st and January 1st in the week ending January 4, 1958 render the plaintiff ineligible for unemployment benefits during said week within the meaning of [Rev. 1958, § 31-236 (4) (a)]?"

The questions reserved in the second case were: "(1) Was the plaintiff partially unemployed within the meaning of [Rev. 1958, § 31-229] during the week ending December 28, 1957? (2) Did the Commissioner err and mistake the law in disregarding the amount of $30. which the plaintiff received as holiday pay as provided in contract . . . in determining the amount of benefits due to the plaintiff for the week ending December 28, 1957? (3) Was the plaintiff partially unemployed within the meaning of [Rev. 1958, § 31-229] during the week ending January 4, 1958? (4) Did the Commissioner err and mistake the law in disregarding the amount of $29.82 which the plaintiff received as holiday pay as provided in contract . . . in determining the amount of benefits due to the plaintiff for the week ending January 4, 1958?"

to question (a) is "No," and to question (b) "Yes"; no answer to question (c) is required. In the second case, the answer to questions (1) and (3) is "No," and to questions (2) and (4), "Yes."

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.