DAVID SHORTT *v.* NEW MILFORD POLICE DEPARTMENT
(5957)

BIELUCH, O'CONNELL and STOUGHTON, Js.

Argued March 16—decision released September 13, 1988

*Janet Bond Arterton,* with whom, on the brief, was *Nancy E. Fey,* for the appellant (plaintiff).

*Michael S. McKenna,* with whom were *Jeffrey B. Sienkiewicz,* and, on the brief, *Richard S. Cody,* for the appellee (defendant).

BIELUCH, J. This is an appeal by the plaintiff from a judgment of the trial court dismissing an action brought against his employer under General Statutes § 31-72[1] for nonpayment of wages. The sole question before us is whether the trial court erred in finding a lack of subject matter jurisdiction for the plaintiff's failure to exhaust available grievance procedures under a collective bargaining agreement. We find error.

The following facts are relevant to this appeal. The plaintiff was hired by the defendant New Milford police department as a police officer. After completing his training, he began working as a probationary patrol officer on July 23, 1984. On August 23, 1984, during the course of a required medical examination, a physician discovered that the plaintiff had certain "extra heartbeats." The plaintiff, however, continued to work as a police officer. He was later examined by several physicians who performed various tests and monitored his heart function to determine the extent and serious-

---

[1] General Statutes § 31-72 provides in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action. At the request of any worker who has failed to receive payment under the provisions of said sections, the labor commissioner may take an assignment of such wage claim in trust for the assigning employee and may bring any legal action necessary to recover the amount provided by this section, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court."

ness of his condition. During this time, the plaintiff continued to work and to receive his salary as a full-time employee of the defendant.

On October 12, 1984, the plaintiff was hospitalized for further medical examination and tests. He received sick pay for the three days he was confined to the hospital. When he returned to work on October 15, 1984, the plaintiff was permitted to carry his police badge and was subject to the orders of his superiors in the police department, but he was not allowed to act in his full capacity as an officer. He was not permitted to seek other employment, even though other jobs were available for which he was qualified. The plaintiff considered himself a badge carrying police officer, but received no wages until he was permitted to return to full active duty on April 17, 1985, after he had executed a workers' compensation waiver of liability for his preexisting condition.

As a member of the International Brotherhood of Police Officers, Local No. 361 (union), and subject to its collective bargaining agreement with the defendant, the plaintiff, on November 15, 1984, filed a grievance concerning the defendant's failure to pay his wages for the previous month. On November 19, 1984, the first step of the plaintiff's grievance proceeding was denied because the defendant considered him to be on "indefinite sick leave without pay." Shortly thereafter, counsel for both parties began to negotiate a possible settlement and no further steps were taken under the grievance procedure of the collective bargaining agreement.[2] When no agreement was reached, the plaintiff

---

[2] Article XXIII of the collective bargaining agreement provides:
"Grievance Procedure and Arbitration

"Grievances arising out of matters covered by this Agreement or conditions of work or applicable law arising out of employee-employer relations will be processed in the following manner:

brought suit under General Statutes § 31-72 to collect wages allegedly due him for the period of six months between October 15, 1984, and April 17, 1985. This action was commenced on October 10, 1986, just as the two year statute of limitations; General Statutes § 52-596;[3] was about to expire.

On December 18, 1986, the defendant moved to dismiss this civil action "for the reason that the court lacks jurisdiction over the subject matter of the dispute." An affidavit[4] attached to the defendant's motion to dismiss

"Step 1.

"An employee or the IBPO having a grievance or complaint, shall take such grievance or complaint to the Chief of Police in writing or, in his absence, the officer in charge. The Chief of Police or the officer in charge, in his absence, shall answer the grievance within five (5) working days from receipt of the grievance in writing.

"Step 2.

"If the grievant or the Union are not satisfied with the decision rendered by the Chief of Police, such grievance shall be submitted in writing not less than seven (7) days prior to the next regularly scheduled meeting date of the Commission. The Board of Police Commissioners shall consider the matter at the next monthly meeting or a special meeting and render its decision in writing within seven (7) days after its meeting.

"Step 3.

"If the grievant or the Union are not satisfied with the decision rendered by the Board of Police Commissioners, he may, within fifteen (15) days, submit the matter to the State Board of Mediation and Arbitration for arbitration. The decision of the Arbitration Panel shall be final and binding on both parties. Said Board shall not have the authority to change, modify, or otherwise amend this Agreement."

[3] "[General Statutes] Sec. 52-596. ACTIONS FOR PAYMENT OF REMUNERATION FOR EMPLOYMENT. No action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues, except that this limitation shall be tolled upon the filing with the labor commissioner of a complaint of failure to pay wages pursuant to the provisions of chapter 558."

[4] We note that the "affidavit" attached to the defendant's motion to dismiss was not properly executed under oath. Rather, it was merely "acknowledged [by the signer] to be his free act and deed." See General Statutes §§ 1-22 to 1-25 governing the form and procedure involved in the use of oaths and §§ 1-28 to 1-41 concerning acknowledgments; see also *State* v. *Grant,* 176 Conn. 17, 23–24, 404 A.2d 873 (1978).

alleged that the plaintiff failed to take further steps in the "administrative" grievance process set forth in Article XXIII of the collective bargaining agreement between the town of New Milford and the police union. The defendant's motion was granted by the trial court on March 13, 1987. This appeal followed.

The single issue on appeal is whether the trial court properly dismissed the plaintiff's civil action for his failure to exhaust all grievance proceedings set forth in the police union's collective bargaining agreement with the town. We hold that the court's dismissal of the plaintiff's civil action, brought pursuant to General Statutes § 31-72, was improper and, accordingly, we find error.

In its brief memorandum of decision, the court, after referring to Article XXIII of the collective bargaining agreement, held: "It is the conclusion of this court that the contract terms mandate that the three steps of the contract be completed before [the] plaintiff may invoke *applicable law,* i.e., Title 31, Part II of the Connecticut General Statutes. The contract provides an adequate administrative remedy that must be exhausted before [the] plaintiff may resort to relief in court. *Fortunato* v. *Board of Public Safety,* 36 Conn. Sup. 637, 640 [423 A.2d 909 (1980)]." (Emphasis in original.)

"It is well settled that a jurisdictional prerequisite to seeking relief in a court of law is that all available administrative remedies must have been exhausted. *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 556, 529 A.2d 666 (1987); *Cummings* v. *Tripp,* 204 Conn. 67, 75, 527 A.2d 1230 (1987); *Doe* v. *Heintz,* 204 Conn. 17, 34, 526 A.2d 1318 (1987)." *Norwich* v. *Norwalk Wilbert Vault Co.,* 208 Conn. 1, 4, 544 A.2d 152 (1988). Under limited circumstances, certain exceptions to this principle apply. See, e.g., id.; *Planning & Zoning Commission* v. *Craft,* 12 Conn. App. 90, 94, 529

A.2d 1328, cert. denied, 205 Conn. 804, 531 A.2d 937 (1987). Generally, however, litigants in administrative matters who have not exhausted all administrative remedies available to them are foreclosed from relief in a court of law. It was under this principle of law that the trial court dismissed the plaintiff's action. In doing so, the court erred.

The trial court's reliance on *Fortunato* v. *Board of Public Safety,* supra, as dispositive of the motion to dismiss the plaintiff's wage action was misplaced. *Fortunato* was not an action to collect wages allegedly unpaid. Rather, it was a mandamus action brought to require the defendant board to reinstate the police officer as a police lieutenant. The plaintiff in *Fortunato* had previously initiated the grievance procedure set forth in the police union's collective bargaining agreement with the city of Meriden. Rather than complete the grievance schedule, he chose to seek a writ of mandamus, claiming that he had been denied due process of law and his rights under the provisions of the city charter. On appeal from the dismissal of the mandamus action, the former Appellate Session of the Superior Court ruled that the collective bargaining agreement controlled the procedure for reinstatement of the police officer under the terms of General Statutes § 7-474 (f). Id., 641. This statute provides that "[w]here there is a conflict between any agreement reached by a municipal employer and an employee organization and approved in accordance with the provisions of sections 7-467 to 7-477, inclusive, *on matters appropriate to collective bargaining,* as defined in said sections, and any charter . . . or any general statute directly regulating the hours of work of policemen or firemen, or any general statute providing for the method or manner of covering or removing employees from coverage under the Connecticut municipal employees' retirement system or under the policemen

or firemen survivors' benefit fund, the terms of such agreement shall prevail . . . . " (Emphasis added.)

General Statutes § 7-468 (a) provides that "[e]mployees shall have, and shall be protected in the exercise of, the right of self-organization, to form, join or assist any employee organization, to bargain collectively through representatives of their own choosing on questions of *wages, hours and other conditions of employment* . . . ." (Emphasis added.) " 'Wages' means compensation for labor or services rendered by an employee . . . . " General Statutes § 31-71a (3). A basic right of an employee is the payment of wages for services rendered. "Wages are no less earned when the employee holds himself in readiness to perform than when he actually performs. *General Motors Corporation* v. *Unemployment Compensation Commission,* 331 Mich. 303, 312, 49 N.W.2d 305 [1951]." *Geremia* v. *Administrator,* 146 Conn. 264, 270, 150 A.2d 203 (1959).

The *collection of wages,* however, is not a matter "appropriate to collective bargaining." See General Statutes § 7-474 (f). Fair wages and their prompt payment are matters of public policy and general welfare and are guaranteed by law. See General Statutes §§ 31-70 through 31-76k. The provisions of General Statutes § 31-72 govern the collection of wages for services rendered. The employee's rights under these statutory provisions are not preempted by collective bargaining agreements.

The plaintiff's statutory right, under General Statutes § 31-72, to bring a separate civil action to collect wages allegedly due him was not foreclosed by his prior submission of a grievance for nonpayment under the union's collective bargaining agreement. In originally submitting his claim to the grievance procedure of the union contract, the plaintiff sought to vindicate his con-

tractual right to collect the unpaid wages. By contrast, in bringing an action pursuant to General Statutes § 31-72 immediately before the running of the two year statute of limitations fixed by General Statutes § 52-596, the plaintiff was asserting an independent statutory right, accorded by this state, to collect twice the full amount of such wages, with costs and reasonable attorney's fees. "The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums." *Alexander* v. *Gardner-Denver Co.,* 415 U.S. 36, 50, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974).

The decision of the United States Supreme Court in *Alexander* v. *Gardner-Denver Co.,* supra, illustrates the clear error in the trial court's decision in this case. The plaintiff in *Alexander,* a black man, filed a grievance under a collective bargaining agreement following his discharge from employment. The agreement contained a nondiscrimination clause. Prior to an arbitration hearing on the plaintiff's claim under the collective bargaining agreement, the plaintiff filed a charge of racial discrimination with the Colorado Civil Rights Commission which referred the matter to the Equal Employment Opportunity Commission (EEOC). Thereafter, the arbitrator, without referring to the plaintiff's claim of discrimination, found that the plaintiff had been discharged for cause. Following a determination by the EEOC that there was not reasonable cause to believe that Title VII of the Civil Rights Act of 1964 had been violated, the plaintiff instituted an action under Title VII to the United States District Court for the District of Colorado. The District Court granted summary judgment against the plaintiff and dismissed the action on the ground that having voluntarily elected to pursue

his grievance to final arbitration under the nondiscrimination clause of the collective bargaining agreement, the plaintiff was bound by the decision of the arbitrator and thereby precluded from suing his employer under Title VII. The Court of Appeals for the Tenth Circuit affirmed. On certiorari, the United States Supreme Court reversed. A unanimous court held that the plaintiff's statutory right under Title VII to a trial de novo on his claim of discharge due to racial discrimination was not foreclosed by prior submission of his grievance pursuant to the collective bargaining agreement. As the court so aptly stated, "a contractual right to submit a claim to arbitration is not displaced simply because Congress also has provided a statutory right against discrimination. Both rights have legally independent origins and are equally available to the aggrieved employee." Id., 52. We find this reasoning applicable here.

There is error, the judgment of dismissal is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.