Golubski Unemployment Compensation Case.

Argued April 15, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Eugene A. Caputo,* with him *Caputo & Caputo,* for appellants.

*William L. Hammond,* Special Deputy Attorney General, with him *Robert E. Woodside,* Attorney General, for appellee.

*Robert F. Banks* and *Reed, Smith, Shaw & McClay,* submitted a brief for American Bridge Company interested party, under Rule 46.

OPINION BY ARNOLD, J., October 1, 1952:

The various claimants here were denied unemployment compensation and took this appeal.[1] They were

---

[1] Under an arrangement whereby all of the claimants' cases were to be disposed of under one order and one appeal.

employes of the American Bridge Company at its Ambridge plant, and the employer gave notice on January 11, 1950, that the plant would be closed from July 10 through July 23, 1950, for the purpose of taking inventory. As the result of this the claimants were unemployed during the periods of time set forth herein. They registered with the bureau and were prima facie entitled to unemployment compensation.[2] Their unemployment was the result of a shutdown by the Bridge Company for its own purposes.

The claimants are members of United Steelworkers of America, and their union had a contract with the Bridge Company which provided, inter alia, for *vacations* as follows: "To be eligible for a vacation . . . the employee must . . . have one year or more of continuous service . . . [those with one to five years shall receive one week's vacation and those with five to twenty-five years shall receive two week's vacation.] Promptly after January 1 of each calendar year each *eligible* employee shall be requested to specify the vacation period he desires . . . but the final right to allot vacation periods . . . is exclusively reserved to the Company . . ." (Italics supplied) It was further provided that "a period of temporary shutdown in any department for any reason between May 1 and October 1, . . . may be designated as . . . the vacation period for any employees . . . who are *eligible for vacation.*" (Italics supplied).

After the notice that the plant would be shut down for the taking of inventory, the company and the union agreed in part that: (1) employes with less than one year's service be considered to be *on a layoff* status for that period; (2) employes with one to five years service "be given a 1-week vacation with pay and consid-

---

[2] *Hassey Unemployment Compensation Case,* 162 Pa. Superior Ct. 14, 56 A. 2d 400.

ered to be *on lay-off status* for 1 week." (Italics supplied).

At this point it is apparent that "layoff status" meant the same thing as a shut down, i. e. an uncompensated layoff; that is to say, if an employe was entitled to a two weeks vacation with pay, he lost nothing; and if eligible for a one week vacation with pay, the "layoff status" applied to the uncompensated week.

Of the claimants involved, one group (a) claimed benefits for two weeks, because they were not entitled to and did not receive any compensation from the Bridge Company for the period of the shutdown; the other group (b) claimed for one week for the reason that they received a paid vacation for but one week of the time. Except as noted hereinafter it is difficult to see how any juggling of words can deprive either group of their rights under the Act.

It is said that the bargaining agent for the claimant agreed to the layoff. This is not correct. The company ordered the layoff and the supplemental contract by the bargaining agent was merely in relief of the company, so that paid or partially paid vacations should be taken and charged against the shutdown ordered. Nor can the supplemental contract be considered an arrangement that the men voluntarily quit work. Instead, they were laid off by the company, and neither the men nor the bargaining agent ever agreed that the men would voluntarily quit.

Their lack of work was not the result of the agreement, for the only *vacations* assumed by the men under the contract were wholly or partially paid vacations, and the contract expressly stipulated that those who were not entitled to any paid vacation were "to be on the layoff status."

The appellees cited *Mattey Unemployment Compensation Case*, 164 Pa. Superior Ct. 36, 63 A. 2d 429,

but that case is clearly distinguishable. In the *Mattey* case the employes and the coal company agreed that there should be no work for a period of some days, i. e. that the coal mine should not be operated during that period. The arrangement there was not for the benefit of the employer but for the benefit of the employes, and the contract had nothing to do with paid vacations. In that case all employes had the benefit of an unpaid vacation, and the shutdown was industry-wide and solely for that purpose. The layoff was forced by virtue of the contract, and after the contract was made neither the employer nor the employes had anything to do with whether or not the mine would work. Obviously those men were voluntarily unemployed, having so contracted. The position of the appellees as to the *Mattey* case is derived by tearing from the context of the opinion certain isolated sentences, without regard to the facts upon which such statements were predicated. In the instant case the claimants never agreed that they should be laid off for two weeks, and it was wholly the employer's option whether or not the shutdown occurred. If it did occur the men agreed only to apply their paid vacation to the two weeks shutdown. The employes were available for work and their failure to work was because the employer furnished no work.

As to the claimants in group (b) who had received "vacation pay" for one week, none of them is entitled to unemployment compensation on this record. The week for which they were not paid constituted only the waiting period required by the Act, so that they were only unemployed for one week, having been compensated for the first week.

It is argued that the claimants would not have worked if outside work could have been obtained. There is no testimony that suitable work was obtainable. The

only claimant who testified that he would have refused offered work was Ellis Miller (N. T. 14, 15, 16), and since he is a claimant in group (b) he is in no event entitled to compensation under this record after the waiting week.

The claimants in group (a), however, are entitled to unemployment compensation for the time that they received nothing from the company. Actually the employer's argument is that the men wanted to return to work with the Bridge Company after the layoff. The fact that they so desired does not deprive them of unemployment compensation.

For analogous cases arriving at the same result see *American Bridge Co. v. Review Board of Indiana Employment Security Division et al.,* (Ind.) 98 N. E. 2d 193; *Schettino v. Administrator, Unemployment Compensation Act et al.,* (Conn.) 83 A. 2d 217.

Order reversed with instructions to enter awards in conformity with this opinion.

RHODES, P. J., dissents.