**COMBUSTION ENGINEERING, INC., Plaintiff-Appellant,**

v.

**G. P. O'CONNOR, George W. Wise, et al., Defendants-Respondents.**

No. 32169.

St. Louis Court of Appeals.

Missouri.

Oct. 19, 1965.

Moller, Talent & Kuelthau, St. Louis, for plaintiff-appellant.

Lloyd G. Poole, Jefferson City, for defendant-respondent Industrial Commission.

Gordon P. Weir, Jefferson City, for defendant-respondent Division of Employment Security.

Wiley, Craig, Armbruster & Wilburn, St. Louis, for defendants Paul Day and others.

BRADY, Commissioner.

This is an action for judicial review of five orders of the Industrial Commission of Missouri which, in effect, affirmed the decisions of the Appeals Tribunal of the Division of Employment Security by denying the request for a review of those decisions. Through consolidation of claims these appeals involve forty individuals. The circuit court affirmed the orders of the Commission and this appeal followed. The term "claimants" as used in this opinion will refer to all the respondents; "Commission" will refer to the Industrial Commission of Missouri; "Division" will refer to the Division of Employment Security; and "the Company" will refer to the appellant corporation. The issue is whether the claimants are eligible for benefits under the Missouri Employment Security Law for the weeks ending July 13 and July 20, 1963.

The limitations of our review in cases such as this are too well known to require citations. The decisions of the Commission on questions of law do not bind this court but on questions of fact our review is limited to ascertaining if, upon the whole record, the Commission could have reasonably made its findings and reached its result considering the evidence in the light most favorable to the findings. We may not substitute our own judgment as to the facts for that of the Commission but are to ascertain if the findings are supported by substantial evidence. See Workmen's Compensation, Mo.Digest, Vol. 29A,

The findings of fact made by the Commission common to all five of the orders to be reviewed are that the claimants were members of a union which had a contract with the Company; that Article 9, Sec. 13, of the contract provided: "The time for

taking vacations will be fixed as nearly as possible to suit the desire of the employees but at the discretion and necessity of the Company. Paid vacations will not be granted when an employee is on strike. The splitting up of vacation time will be left to agreement by the employee and his foreman"; that during the course of negotiations which resulted in this contract, the Company had prepared and furnished to the representatives negotiating for the union an interpretation of Article 9, Sec. 13, which in those parts pertinent to this inquiry provides: " * * * The balance of Vacation Article is to remain the same as our present agreement, including Section 13. It is understood that the interpretation of the wording of this Section allows the Company to shut down the plant for vacation purposes, but it is further understood that, during the term of this Contract, if this should occur the Company shall notify the employees prior to February 1, and an employee who so desires may elect to take the plant shut-down period as time off without pay and schedule his vacation in accordance with present practice"; that this interpretation was not signed by the parties to the contract and was not included in the contract; that on December 27, 1962, the Company posted a notice to the effect that its plant would shut down for annual vacations the weeks ending July 13 and July 20 of 1963; that after this notice was posted, the president of the union protested the plant shutdown in a meeting between the Company and the union representatives but no grievance was filed; and that the Company's plant was shut down for the weeks ending July 13 and July 20, 1963 except for maintenance and inventory operations. While it does not plainly appear, we must take the case as if there had been an earlier layoff for there is no contention here raised that the week ending July 13 constituted the "waiting week." These findings are binding upon us for the Company makes no attack upon them but confines itself to allegations of prejudicial error which raise questions of law alone.

The Company's industrial relations manager was asked, " * * * what sort of factors go into the arriving at the conclusion of what dates to pick out" for the shutdown. His answer was, "The most important one is the synchronization of the time as far as our other plants is concerned. We interchange work and products between our manufacturing divisions. The primary interest was to select a date that would interfere least with the movement of materials between the plants."

The Commission found that none of the claimants chose individually or through their union to take a vacation in either of the weeks ending July 13 or July 20; that each of the claimants was able and willing to work and sought work during those periods; and that each of them was therefore eligible for benefits for those weeks. The Commission further found that none of the claimants asked for a vacation during these weeks and none of them received vacation pay for either of these weeks; that the claimants performed no work and earned no wages during those weeks.

■ The Company first contends that the claimants are not " * * * unemployed through no fault of their own" as that phrase is used in § 288.020, RSMo 1959, V.A.M.S., and accordingly, are not within the class of employees the legislature intended should receive unemployment benefits. The second contention is that these claimants were not "totally unemployed" as that term is used in § 288.030, subd. 22(1), RSMo 1959, V.A.M.S.

Barring some case as yet unreported, this is a case of first impression in this state. However, the question has arisen elsewhere. Annotations dealing with this issue can be found in 8 A.L.R.2d at 433 and 30 A.L.R. 2d at 366. It will serve no purpose to review all the cases for the reason that in many the wording of the applicable sections of that state's unemployment compensation act is not the same as it is in Missouri and for the additional reason that in each of them there are factors bearing upon the de-

cisions reached which are not present in the instant case. In many of the cases reviewed in the note, especially where there is no governing provision in the labor contract, the courts involved have determined the issue by inquiring into why or for whose benefit the shutdown occurred. As stated in Texas Employment Commission v. Huey, 161 Tex. 500, 342 S.W.2d 544 at 547: "* * * if the plant is shut down for the benefit or convenience of the employer, or in accordance with company policy, or because the employer wants the plant shut down for a period for any reason (as for inventory, retooling, weather conditions, lack of orders, etc.), those employees laid off without pay and who have registered with the Employment Commission as being ready, able, willing and desirous of obtaining work but for whom no work is available at the plant or elsewhere are eligible for, and not disqualified from receiving, unemployment benefits. * * *" This distinction is graphically illustrated by the situation as it was in Pennsylvania prior to a recent change in that state's unemployment compensation act. In Mattey v. Unemployment Compensation Board of Review, 1949, 164 Pa.Super. 36, 63 A.2d 429, unemployment compensation was denied where the shutdown was found to be for the benefit of the employees. On the other hand, that same court allowed recovery where the shutdown was shown to be for the benefit of the employer who wanted to take an inventory and this was true even though some of the employees were on paid vacation during that period. Golubski v. Unemployment Compensation Board of Review, 1952, 171 Pa.Super. 634, 91 A.2d 315, 30 A.L.R.2d 362, 57 Dickinson Law Review 248 (1953). In the instant case the fact that this shutdown was for the Company's benefit is apparent from the testimony given by the Company's industrial relations manager. He stated its purpose was to aid the Company in synchronizing the movement of materials between the plant involved and the other plants which it operated. There is no evidence as to any purpose benefiting the employees.

However, in the case at bar the labor contract did contain provisions controlling the question of vacations. In Thornbrough v. Schlenker (1958), 228 Ark. 1012, 311 S.W.2d 753, 1. c. 755, it was held that: "* * * if, by the contract between the Union (the agent of the workers) and the management of the plant, there was reserved by the management of the plant the right to fix, at its own option, a plant wide vacation period, then the employees had agreed to such vacation and had been 'voluntarily unemployed'; and, therefore, not entitled to employment benefits. But if the contract had no provision whereby the management reserved the right to fix, at its own option, a plant wide vacation shutdown, then the employees had not agreed to such vacation period and were 'involuntarily unemployed' during such shutdown period; and, being involuntarily unemployed, they were entitled to unemployment compensation." The rationale for such a rule proceeds first upon the basis that if an individual employee has asked for a vacation or for time off and been granted it, he is not involuntarily unemployed. His unemployment results from his own volition in making the request. As stated in Thornbrough v. Schlenker, supra, the situation is the same where the labor contract contains a provision providing for a plant wide vacation during a specified period. The employees, members of the union, are held to have requested the vacation by the action of their bargaining agent, the union, and their approval of the contract. See Bedwell v. Review Board of Indiana Employment Security Division, 1949, 119 Ind.App. 607, 88 N.E.2d 916.

The Company cites and relies upon Grobe v. Board of Review, 1951, 409 Ill. 576, 101 N.E.2d 95. That case must be distinguished from that at bar on the grounds that in Grobe the court found the company to have reserved the right to have its employees take their vacation at a time when a department was closed down.

Article 9, Section 13, does not provide for a plantwide shutdown vacation period but

clearly envisions the employees taking vacations at other times during the year. The Company's unsuccessful effort to insert a new interpretation of this section into the labor contract and the evidence that some of these claimants had, prior to the weeks here involved, requested and been granted their vacations by the Company, clearly shows the Company recognized and treated this section of the contract as a denial of any right to require all its employees to take a vacation during the weeks the plant was to be shut down.

In Bussmann Mfg. Co. v. Industrial Commission, Division of Employment Sec., Mo. App., 335 S.W.2d 456, this court held the word "fault" as used in § 288.020, supra, meant "failure or volition." The Company urges that since the claimants knew of the coming shutdown and therefore knew they could avoid unemployment for that period by taking their vacations at that time but did not choose to do so, their unemployment was the result of their own volition. That argument is unacceptable. The only action these claimants took of their own volition was that which they had a perfect right to take under the labor contract; i. e., not to take their vacation during the weeks ending July 13 and July 20. Their unemployment does not result from that act but from the action of the Company in closing down the plant for those two weeks for its own benefit. Even though the claimants made their choice, they would have been at work for these two weeks had it not been for the Company's action. To adopt the Company's argument would be, in effect, to require the claimants to take their vacation during the shutdown period fixed by the Company even though the labor contract does not so provide; that is, unless one is economically naive. Such a ruling would convert the terms of Article 9, Section 13, into something far different than that which the parties had bargained and agreed upon. The effect of our adoption of the Company's argument would be to require the claimants to choose between compliance with the Company's unilateral and ex contractu determination of when an employee should take his vacation or the loss of the right to compensation as granted by the law of this state. Of course, the employees could have bargained away this free choice of vacation time and thus said to have agreed to be bound by a decision between these two results, but they did not do so. The Company cannot now force such a choice upon the claimants.

The Company next contends that these claimants cannot be awarded compensation for the reason that they were not "totally unemployed" as that phrase is used in § 288.030, subd. 22(1), supra. That section states, "An individual shall be deemed 'totally unemployed' in any week during which he performs no services and with respect to which no wages are payable to him." Sec. 288.036, RSMo. 1959, V.A.M.S., defines "wages" to mean "all remuneration payable or paid" and states that "Vacation pay * * * shall be considered as wages for the week with respect to which it is payable. * * *" The Company's argument is that "wages" (vacation pay) were payable to these claimants for these two weeks. In this connection the Company cites and relies upon American Central Mfg. Corp. v. Review Board of Indiana Employment Security Division, 1949, 119 Ind.App. 430, 88 N.E.2d 256. The Indiana Unemployment Compensation Act contains a provision defining "wages" as every form of remuneration and which is similar in effect to § 288.036, supra. That case is to be distinguished from the instant case. In the American Central case the court found that the union by its actions had agreed to the action of the employer closing the plant for vacations. That being so, the employees were bound by the agreement of their bargaining agent. Moreover, in the American Central case, each of the employees was given his vacation pay for the shutdown period. In the instant case none of the claimants were paid vacation pay for the shutdown period.

■ In ruling upon this contention it is necessary to separate the claimants into

two groups. The first of these groups encompasses all the claimants who had taken their vacation prior to the weeks of July 13 and July 20. As to these claimants there was no vacation pay (wages) payable. Their vacation pay had already been received. There were no weeks with respect to which vacation pay was payable to them. Obviously these claimants were "totally unemployed" for the weeks ending July 13 and July 20 and were entitled to compensation.

The second group contains all the claimants who had not taken their vacations prior to the shutdown period. Was there any vacation pay (wages) payable to them with respect to the weeks ending July 13 and July 20? Again the answer must be that there was not. These claimants had a right to vacation pay but it was an inchoate right that could not become fully operative until they requested that it be allocated to some specific period. Until they made that request their vacation pay was as payable for any other two weeks in the year as it was for the two weeks here involved. Vacation pay does not become payable until the employee requests his vacation for a designated period. It follows that there was no vacation pay payable to the claimants in this group with respect to the shutdown period and they were "totally unemployed" for those two weeks.

The judgment of the circuit court affirming the decision of the Industrial Commission should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment is affirmed.

ANDERSON, Acting P. J., RUDDY, J., and JAMES D. CLEMENS, Special Judge, concur.

WOLFE, P. J., not participating.