Ungarean Unemployment Compensation Case.
Department of Labor and Industry, Appellant,
v. Unemployment Compensation Board
of Review.

Argued December 16, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Morley W. Baker*, Assistant Attorney General, with him *Walter E. Alessandroni*, Attorney General, for Department of Labor and Industry, appellant.

*Sydney Reuben*, Assistant Attorney General, for Unemployment Compensation Board of Review, appellee.

*Jerome H. Gerber*, with him *Handler and Gerber*, for intervening appellees.

OPINION BY WATKINS, J., April 14, 1966:

This appeal involves 48 employees of the Rheem Manufacturing Company of Monaca, Pennsylvania. The claimants filed for benefits and the Bureau of Employment Security denied benefits under §404(d) of the Act, 43 PS §804(d). The claimants appealed. The Referee reversed the Bureau and awarded benefits. The Bureau appealed to the Unemployment Compensation Board of Review which affirmed the Referee. This appeal by the Bureau followed.

The claimants' last day of work was July 16, 1964. They were out of work because of a plant shutdown. The plant, pursuant to a Union agreement, was closed between July 20, 1964, and August 9, 1964 for vacation purposes. However, the same Union agreement permitted individual employees to designate during the calendar year, with the consent of the employer, the vacation periods which they desired. All of the claimants in this appeal fall within the category of employees who designated a time other than the vaca-

tion shutdown period for their vacations with the consent of the employer.

The issue in this appeal is whether the compensation authorities had the power to allocate vacation pay to the general vacation shutdown period when the vacation was taken at a time other than that period.

The claimants were entitled to three weeks vacation with vacation pay. They took their vacations, with the consent of the employer at times other than the general vacation shutdown. Having received their vacation pay for the periods in question they did not file for unemployment compensation. They were ready and willing to work during the period of the general vacation shutdown. So that in effect, these claimants, by force of circumstance, were obliged to remain away from work six weeks and were given their vacation pay for three weeks. They fall into several categories: Some of the claimants took their vacation during a three-week period that included part of the plant vacation shutdown; some took their vacations before and after the vacation shutdown period; and some were not entitled to vacations at the time of the general vacation shutdown but qualified and received their vacations at a subsequent time within the calendar year. We believe that the decision as to the right to allocate will determine the matter for all claimants regardless of the above categories.

Section 4(u) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. sess., P. L. (1937) 2897, 43 PS §753 et seq., defines the term "unemployed" as follows:

". . . An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if

the remuneration paid or payable to him with respect to such week is less than weekly benefit rate plus his partial benefit credit.

"Notwithstanding any other provisions of this act, an employe who is unemployed during a plant shutdown for vacation purposes shall not. be deemed ineligible for compensation merely by reason of the fact that he or his collective bargaining agents agreed to the vacation.

"No employe shall be deemed eligible for compensation during a plant shutdown for vacation who receives directly or indirectly any funds from the employer as vacation allowance."

Section 404(d) of the law provides that an eligible employe who is unemployed during a week: ". . . shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate less the total of . . . (2) vacation pay, if any, . . ." The section goes on to provide: ". . . Vacation pay, severance or separation allowances, dismissal wages or other remuneration deductible under the provisions of this subsection shall be pro-rated on the basis of the employe's normal full-time weekly wage and as so pro-rated shall be allocated to such period or periods of unemployment as shall be determined by rules and regulations of the department . . ."

What the appellant contends is that the vacation pay received early in the year before the general vacation shutdown or after the shutdown shall be allocated to the period of the shop shutdown. Such allocation, if permissible, must be by virtue of §404(d) of the law, 43 PS §804(d), which provides: ". . . vacation pay . . . shall be allocated to such period or periods of unemployment as shall be determined by rules and regulations of the department . . ."

Regulation 108 of the Department of Labor and Industry provides in part as follows:

"B. 1.  Unemployment compensation otherwise payable to an individual with respect to any week shall be reduced by the amount of vacation pay paid or payable to him with respect to all or any part of a vacation period included within such week.  For purposes of this regulation, 'vacation period' means:

"a.  The period of any plant-wide closing for vacation at the establishment in which the claimant is employed or the period of a department-wide closing of the department in which the claimant is employed, or

"b.  A period designated or approved by the claimant's employer as his vacation, in the absence of a plant-wide or department-wide closing as above described or where the claimant worked in the establishment during such closing."

Regulation 108 goes on to provide:

"2.  For purposes of this Section B, vacation pay shall be deemed to have been paid with respect to the vacation period irrespective of the time it is actually received, provided that it is for the calendar year in which the vacation period occurs."

It is clear and logical that the department followed the law and provided that in order to reduce compensation the vacation pay shall have been paid to the claimants with respect to the "vacation" week involved in the claim.  These claimants received their vacation pay with respect to their individually scheduled vacation periods and not for the July-August vacation shutdown. *Piestrak Unemployment Compensation Case (Susquehanna Collieries Division)*, 404 Pa. 527, 172 A. 2d 807 (1961), and *Franceschi Unemployment Compensation Case,* 196 Pa. Superior Ct. 150, 173 A. 2d 774 (1961), are landmark cases in matters pertaining to vacation pay.  The *Susquehanna Collieries* case dealt with the problem of eligibility of claimants where the employer shut down the operation for a two-week vacation period.  In this case the Bureau allocat-

ed vacation pay as provided in the law. The Supreme Court said, at page 529, ". . . Thus, if an employee received $140 vacation pay and had a full-time daily wage of $28, the entire $140 vacation payment was allocated to the five working days of the first vacation week and unemployment benefits allowed in full for the second week. . . ."

The Supreme Court in the *Susquehanna Collieries* case, supra, laid down the following basic rules: .

". . . First, as noted above, absence from work because of a plant shutdown for vacation does not automatically make an employee ineligible either as voluntary quit or as being unavailable for suitable work. Of course, his availability may still be questioned on an individual basis (i.e., he is not automatically, as the Superior Court implied in its opinion below, 'deemed . . . available for suitable work' simply because of the 1955 Amendment). . . .

". . . Second, in order to resolve the multitude of varying situations, the legislature has delegated to the Department of Labor and Industry extensive regulatory authority subject to three standards: first, vacation pay shall be deemed remuneration; second, absence from work during an agreed to plant shutdown for vacation does not result in automatic ineligibility; and third, the receipt of vacation pay shall render an employee ineligible for compensation during a plant shutdown for vacation.

"We agree with the Superior Court's prior holding that the last of these standards must be given a reasonable interpretation. Otherwise, the receipt of a few dollars as vacation pay would serve to make the recipient totally ineligible for benefits, a result which we can not attribute to the legislature. We conclude further that the receipt of vacation pay is to be allocated to an actual vacation period and to be allocated within

such period as the Department provides by its regulations; . . ."

In the instant case what was the vacation period with respect to which the vacation pay was made? The Referee and the Board found the following facts which are supported by competent evidence and are binding on the reviewing court:

"2. All claimants had designated vacation periods for which they received vacation pay.

"6. During the period of the plant-wide shutdown, when each of the instant claimants was not on vacation, they were all able and available for full-time employment.

"7. All of the claimants received vacation pay for their designated vacation periods and for no other period, and during this time the claimants did not file for unemployment compensation benefits."

The referee also found in his opinion: "None of the instant claimants had actual vacation periods coinciding with the plant-wide shutdown".

In the *Franceschi Unemployment Compensation Case,* supra, the Court said: "In light of the Supreme Court's opinion, we believe that the period to which the compensation authorities allocated the claimant's vacation pay was a 'a non-vacation period', and that the compensation authorities have no right to make such allocation. The claimant, therefore, received no vacation pay which may be allocated to the two weeks in question, and cannot be denied benefits on the basis of the vacation pay previously received by him." If it is improper to allocate vacation pay to a non-vacation time it is equally improper to allocate vacation pay to the general shutdown period, which, for these claimants was a non-vacation period, so found by the fact finders.

We do not believe that the *Lybarger Unemployment Compensation Case,* 418 Pa. 471, 211 A. 2d 463 (1965),

is applicable to this case. In that case we said, that an employer and a Union could not by contract arrange unemployment in the context of an annual share the work plan, and the Supreme Court in the *Lybarger* case also speaks of the ineligibility imposed by §402(b)(1), 43 PS §802(b)(1), the voluntary quit section. However, the legislature has authorized vacation arrangements by employer and Union agreements and the Supreme Court in the *Susquehanna Collieries* case, supra, at page 537 said: ". . . Third, reference to the collective bargaining agreement by the Department in its regulations is perfectly proper to determine the connection in a particular case between vacation pay and vacation time. Unlike the situation presented in *Warner Company v. U. C. Board of Review*, 396 Pa. 545, 153 A. 2d 906 (1959), where we rejected the contention that the bargaining agreement controlled the eligibility for compensation of a retired employee, the present case involves a legislative mandate which enables the administrative authorities to determine how to allocate by regulation and thereby grants power to the Department to require a reference to the bargaining agreement for determination of a fact regarding the relationship between pay and time."

Vacation pay, in reality, is deferred wages earned after required period of employment and the vacation layoff is clearly distinguishable from the contrived unemployment in the *Lybarger* case. So in the context of vacation pay cases the Supreme Court made it clear that the specific provisions of §4(u) and §404(d) of the law, Regulation 108 of the Department of Labor and Industry and the collective bargaining agreement do apply. They are read together with the general provisions of §3 of the Act, 43 PS §752.

Decision affirmed.