559 P.2d 252 (1976)
MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a Colorado Corporation, Petitioner,
v.
DEPARTMENT OF LABOR AND EMPLOYMENT et al., Respondents.
No. 76-176.
Colorado Court of Appeals, Div. 1.
October 14, 1976.
Rehearing Denied November 26, 1976.
*253 DeMuth & Eiberger, Russell P. Rowe, Rodney L. Smith, Denver, for petitioner.
J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Louis L. Kelley, Asst. Attys. Gen., Denver, for respondents.
Selected for Official Publication.
COYTE, Judge.
Petitioner, Mountain Bell, seeks review of an order of the Industrial Commission granting unemployment benefits to claimant, Linda Peterson. We affirm the order.
Claimant was first employed by Mountain Bell in May 1970. In August 1974, claimant requested a leave of absence in order to accompany her husband to Toledo, Ohio, where he was attending college. She also initiated a request for transfer to the Ohio Bell system. Pending acceptance of the transfer, Mountain Bell granted the leave of absence, which was eventually extended into September 1975. The terms of the leave did not include a guarantee of re-employment, although claimant would retain her seniority and wage credits if the transfer were completed before expiration of the leave. An additional provision of the agreement permitted Mountain Bell to terminate the leave upon the employee's engaging in "anything which in the judgment of [Mountain Bell] is prejudicial to the company." She was at all relevant times considered *254 by Mountain Bell to be an employee on leave of absence.
As the expected transfer did not immediately materialize, claimant, in the fall of 1974, secured employment in an Ohio bank for a period of 19 weeks. When this employment terminated, claimant filed for unemployment benefits. Applying the special award section of the act, § 8-73-108(8)(a), C.R.S. 1973, the referee determined that claimant had separated from employment in order to fulfil a marital obligation and thus was entitled to benefits thereunder. See Briggs v. Industrial Commission, Colo. App., 539 P.2d 1303 (1975). The decision and findings of the referee were adopted by the Industrial Commission.

I
The question of whether an employee enjoying "leave of absence" status should be eligible for unemployment benefits is one of first impression in this state. We conclude that neither the relevant statutory provisions nor judicial interpretations are wholly dispositive of this case.
The unemployment compensation act is to be liberally construed so as to further its remedial and beneficial purposes. Andersen v. Industrial Commission, 167 Colo. 281, 447 P.2d 221 (1968). However, we do not agree with the Commission that § 8-70-103(21) of the statute, which defines those persons deemed "totally unemployed," is conclusive under these circumstances. This section refers to the amount of benefits to which a worker already eligible for an award is entitled during a given week, as distinct from a worker who is "partially employed." To adopt a rule of construction equating no performance of services for which wages are payable with a definition of "employment" flatly determinative of eligibility would be inconsistent with other portions of the act and contrary to its direct, unambiguous language. See §§ 8-73-108 and 8-70-103(10), C.R.S. 1973. Thus, whether claimant was "separated from employment" within the meaning of the act is a matter not specifically covered by the statute.
Similarly, while the act prohibits "any agreement by an individual to waive, release, or commute his rights to benefits," § 8-80-101, C.R.S. 1973, the leave of absence agreement here did not contain any explicit relinquishment of claimant's rights to unemployment benefits. Waiver in the strict legal sense requires a showing of intent and knowledge of material facts on the part of one surrendering his rights. Ewing v. Colorado Farm Mutual Casualty Co., 133 Colo. 447, 296 P.2d 1040 (1956). There is no evidence that claimant intended to forego unemployment benefits, or that she knew her "leave of absence" status would preclude such a claim. Hence, the agreement does not by its terms contravene the statutory prohibition.

II
The discernible modern tendency is to grant unemployment benefits to workers forced into retirement by the provisions of a negotiated collective bargaining agreement, e. g., Employment Security Commission v. Magma Copper Co., 90 Ariz. 104, 366 P.2d 84 (1961), or to workers on enforced vacation to the extent the employer is not obligated to pay wages. Iowa Malleable Iron Co. v. Iowa Employment Security Commission, Iowa, 195 N.W.2d 714 (1972); Western Electric Co. v. Industrial Commission, 489 S.W.2d 475 (Mo.App.1973); and see In re Interrogatories by the Industrial Commission, 30 Colo.App. 599, 496 P.2d 1064 (1972). The rationale of these cases is that an agreement having the effect of a waiver, or which would permit the employer and employee to construe the terms of the unemployment compensation statute is contrary to public policy. See also Gollender v. Morgan, 17 Or.App. 104, 520 P.2d 453 (1974); Note, 59 Colum.L.Rev. 209 (1959). The sounder reasoning thus has been to disregard employer-employee agreements attempting to impede the worker's access to benefits.
Petitioner refers to various cases which it regards as controlling the question here. Not only are these opinions distinguishable, *255 but they fully support the basis of this decision. We conclude that claimant's "Leave of absence" did not constitute an employment relationship such as to deprive her of benefits under § 8-73-108(8)(a), C.R.S. 1973. Compare Goodyear Tire & Rubber Co. v. Employment Security Board of Review, 205 Kan. 279, 469 P.2d 263 (1970), with Southwestern Bell Telephone Co. v. Employment Security Board of Review, 210 Kan. 403, 502 P.2d 645 (1972).
The obvious, but crucial, distinction between this case and Goodyear Tire, supra, insofar as it remains viable precedent, is the existence of an agreement guaranteeing the employee a right to return to work. Claimant Peterson had no such rights whatsoever under her leave of absence agreement.
This same distinction applies to Chenault v. Otis Engineering, 423 S.W.2d 377 (Tex. Civ.App.1967), in which the court held that a covenant not to compete was valid as it was given in consideration for a leave of absence agreement containing a guarantee of re-employment and other rights. Mutual and enforceable contractual obligations had been created, which is not the fact here. Similarly, Southwestern Bell Telephone Co. v. Thornbrough, 232 Ark. 929, 341 S.W.2d 1 (1960), upon which petitioner also relies, involved a leave of absence promising claimant a right of re-employment.
Claimant, in conclusion, was not "employed" within the meaning of the unemployment compensation act by virtue of her leave of absence agreement. That agreement created no rights in claimant inasmuch as she was not guaranteed re-employment and the leave could be cancelled at any time for activities the company deemed "prejudicial" to it. The arrangement was wholly illusory as to its contractual elements.
There was sufficient finding of evidentiary fact to support the referee's decision that claimant left her employment under a condition of marital obligation.
The order awarding benefits to claimant is affirmed.
ENOCH and STERNBERG, JJ., concur.