WESTERN ELECTRIC COMPANY, a corporation, Appellant,

v.

INDUSTRIAL COMMISSION of Missouri et al., Respondents.

No. 25958.

Missouri Court of Appeals, Kansas City District.

Oct. 9, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1972.

Application to Transfer Denied Feb. 12, 1973.

Lawrence M. Berkowitz, Earl J. Engle, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for appellant.

Lloyd G. Hanley and Rick V. Morris, Jefferson City, for Division of Employment Security.

Lloyd G. Poole, Jefferson City, for Industrial Comm.

Michael D. Gordon, Jolley, Walsh, Gordon & Staab, Kansas City, for individual respondents.

SWOFFORD, Judge.

This is an appeal from the judgment of the Circuit Court of Jackson County, Missouri affirming a decision of the Industrial Commission of Missouri, holding that the

eight individual respondents are eligible for unemployment compensation benefits under the Employment Security Law, Chapter 288, V.A.M.S.

These claimants, employees of the appellant, Western Electric Company, filed claims with the Division of Employment Security for compensation to cover the period of July 13, 1970 to July 27, 1970. These claims were allowed by deputy hearing examiners in separate hearings and the employer appealed. The claims came on for hearing before the Appeals Tribunal of the Division of Employment Security, were consolidated, and were heard before Appeals Referee, Hon. Robert L. Smith, who in a written decision found in favor of the claimants, holding that they were eligible for unemployment benefits.

The employer filed its application for review of this appeals decision to the Industrial Commission of Missouri, which application for review was denied and the findings and decision of the Appeals Tribunal were thereby upheld and adopted for purposes of judicial review. Section 288.-200(1) V.A.M.S.

The employer thereupon filed its petition for review of the decision of the Industrial Commission of Missouri in the Circuit Court of Jackson County as provided by Section 288.210 V.A.M.S. and the Circuit Court affirmed the findings and judgment of the Appeals Tribunal of the Division of Employment Security of the Industrial Commission and in due course this appeal followed.

Our function in this appeal is defined in Article V, Section 22, Constitution of Missouri, V.A.M.S., which provides:

"Sec. 22.   Judicial review of action of administrative agencies— Scope of review

Section 22. All final decisions, findings, rules and orders of any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record."

The scope of our review is further and specifically defined in Section 288.210 V. A.M.S. as follows:

"Judicial review of decisions of industrial commission.

* * * In any judicial proceeding under this section, the findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law. * * *"

As to the facts, we must view the evidence in a light most favorable to the findings of the commission, together with all favorable inferences to be drawn therefrom. We should not disturb the finding of the commission unless it was clearly contrary to the greater weight of the evidence. Producers Produce Company v. Industrial Commission of Missouri, Mo.Sup. en Banc, 291 S.W.2d 166, 173; Union-May-Stern Company v. Industrial Commission of Missouri, Mo.App., 273 S.W.2d 766, 768; Rapp v. Industrial Commission of Missouri, Mo.App., 360 S.W.2d 366, 368; LaPlante v. Industrial Commission of Missouri, Mo.App., 367 S.W.2d 24, 27.

The evidence in this case may be summarized as follows:

The eight claimants were hourly rated production workers of the Western Electric Company at its plant in Lee's Summit, Missouri. Each of the claimants was employed and had effective dates of service on or subsequent to January 17, 1970 and, therefore, none of them had completed six full months of service for the employer prior to July 1, 1970.

The Western Electric employees at Lee's Summit were represented by Communications Workers of America under a general agreement covering wages, hours of work and other conditions of employment. This agreement did not contain a union security arrangement making it compulsory that all employees at the Lee's Summit plant become members of the union, and it would appear from the record that at the time of the shutdown of the plant in July, 1970, none of the claimants were in fact members of the union, although two of them apparently became members thereof after returning to work July 27, 1970.

The evidence before the Industrial Commission was that it was a company policy, usually, but not invariably, followed, to shut down the production of its plant during two weeks of each July in order to perform plant and machinery maintenance, allocation and stock piling of material and other non-productive activities. During the shutdowns for this purpose, most of the employees were required to take all or most of their vacations.

The company determined that this shutdown period would be from July 13, 1970 to July 27, 1970 and most, but not all, of the production employees were to take their vacations during that period. One of the claimants, Pine, continued to work in production, as did other members of his department, during the week of July 13, but was off work the week following July 27, when the rest of the production employees had returned to their jobs. His claim was considered below and will be so considered here, as governed by the same principles as the claims of the other seven individual respondents.

Employees who had not had six full months of service before July 1 in any calendar year were required to take this period without pay. Those with six months or more of service received pay during their vacation according to a formula set forth in Article 20, Section 4, of the General Agreement (Employer's Exhibit 1).

While it was the general rule and company policy that these vacations be taken during the two weeks shutdown in each July, Mr. Fred Fuller, the Employment Supervisor at Western Electric, testified that all employees had their vacations scheduled during that period except those that are scheduled otherwise by the company; that approximately 300 employees continued to work during this period in July of 1970; and that some employees had vacations at other times, and some had four or five weeks vacation periods, and that it was up to the company as to when they took such vacations. He was unable to explain why the contract in terms does not require all production employees to take vacations during the shutdown.

Mr. Glenn Penhallegon, the Manager of Manufacturing at the Western Electric plant, testified that employees ineligible for paid vacations would be forced to take a two weeks vacation without pay. He further testified that if the company so determined, these shutdown periods would have been ordered regardless of the contract with Communications Workers of America, and further stated:

"Well, there may be emergency situations which preclude shutting down the plant so we don't want to foreclose the ultimate possibility of not shutting down the plant * * *" (T. 75)

The parts of the Agreement between Western Electric and C.W.A. pertinent here provide in part as follows:

"ARTICLE 20—VACATIONS.

\*  \*  \*  \*  \*  \*

2. Vacation Eligibility.

2.1 An employee will be granted vacation *with pay* (or allowance in lieu thereof) during the current calendar year in accordance with the following table and subsequent provisions of this ARTICLE based on his TERM OF EMPLOYMENT as of July 1 of the current Calendar year * * *" (Emphasis added)

There follows a detailed method with reference to eligibility, which shows that no employee who has less than six months of service as of any July 1 is eligible for any paid vacation. Article 20 further provides:

"3.  Scheduling Vacation.

3.1  Vacations shall be taken during the two weeks standard vacation period *except for those employees who are required by the Company to work* during that period due to the needs of the business. *Vacations not scheduled during the standard vacation period* will be scheduled in accordance with the employees' wishes to the extent consistent with the needs of the business, giving due consideration to TERM OF EMPLOYMENT." (Emphasis ours)

Article 20, Section 4, sets forth the method of computation of vacation pay.

The facts are undisputed that each of the claimants herein was laid off work without pay, from July 13, 1970 to July 27, 1970, and it is that period for which each of them claims unemployment benefits under the Missouri Employment Security Law, Section 288.010, et seq., V.A.M.S. Pine's claim is apparently for the last week of that period and the week subsequent thereto.

At the time of the employment of each of the claimants, his application for employment upon the face thereof contained a rubber stamp reading:

"I understand that during the standard vacation period from *7–13* through *7–24* [1] that *I will consider myself voluntarily unemployed and be off without pay* except for whatever amount of paid vacation I may be eligible.

Applicant —————————

Interviewer —————————"

(Emphasis added)

Each of the claimants signed such a statement, except claimant Pine, who did not do so because of administrative error.

The decision of the Appeals Tribunal substantially found the foregoing facts to be true and held that under those facts, the claimants were required to accept the two weeks period of unemployment without pay, but that this was not voluntary, and that the claimants were, therefore, eligible because of their temporary total unemployment during that period, and that they were otherwise eligible for benefits under the Employment Security Law.

We agree with the findings of the Industrial Commission, later affirmed by judgment of the Circuit Court, and we, in turn, affirm.

█ It is the position of the appellant-employer in urging us to reverse, that each of the claimants was *voluntarily* unemployed during the period between July 13 and July 27, 1970 under the terms and provisions of the union-company contract and was, therefore, not entitled to benefits under the Missouri Employment Security Law; that they were not entitled to such benefits under their own individual employment contracts, and that none of the claimants were "available for work" during that period.

The first contention of appellant must be rejected. We have carefully reviewed the agreement between the appellant and the Communication Workers of America and even if its terms were considered binding on the non-member claimants, there is nothing set forth therein covering "shutdown vacations" without pay.

Article 20, Section 2.1, deals exclusively *with paid vacations* and Article 20, Section 3.1 does not have any reference to vacations without pay during the shutdown (or as it is termed "standard vacation period") such as was imposed upon these claimants.

---

1. July 24, 1970 was a Friday. Shutdown period was to end Monday, July 27, 1970, hence the difference in dates.

To adopt the interpretation urged by the appellant is to read into the contract provisions that are not there. This, we cannot do.[2]

■■ Neither can we accept the contention of appellant, that the claimants were not entitled to unemployment benefits by reason of their individual employment contracts. Appellant relies upon the rubber stamp affixed to the face of their applications for employment to support this position.

It is true that this stamp appeared on each of the applications (except Pine's) and that each claimant signed on the line indicated, and that the stamp purported to express an understanding that a "standard vacation" period would occur from July 13 to July 27 and that during that period each would consider himself *"voluntarily unemployed"* and "be off without pay". Assuming, without deciding, that this appendage to the applications constituted an agreement by each claimant to take the period indicated as a *vacation without pay,* it can by no valid or reasonable interpretation be considered an agreement not to claim *unemployment compensation* during that period. If such agreement was so *intended* (as it is now *contended*), it could have been simply stated so as to be readily understandable to the applicants.

Also, the use of the phrase that each would consider himself "voluntarily unemployed" would be unnecessary if the simple agreement was to take a vacation without pay, and at best, it is a conclusion of law clearly intended by the employer to place these employees into a category of ineligible claimants under the Employment Security Law, *in futuro,* if and when the plant actually shut down during that period.

This alleged agreement declared by appellant to be a part of the claimants' individual employment contracts barring their claims is against public policy and void. The legislature has clearly stated such public policy, in Section 288.020 V.A.M.S., as follows:

"Public policy declared—Construction of law

1. As a guide to the interpretation and application of this law, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state resulting in a public calamity. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

2. This law shall be liberally construed to accomplish its purpose to promote employment security both by increasing opportunities for jobs through the maintenance of a system of public employment offices and by providing for the payment of compensation to individuals in respect to their unemployment. (L.1951, p. 564 Sec 1)"

The other approach from which this must be viewed is that the rubber stamp "agreement" was in fact an attempted waiver or release of claimants' rights under the Employment Security Law, and so viewed, it would be absolutely illegal and void. The Employment Security Law provides, in part:

"288.380. Offenses and penalties

---

2. In those cases where the union contracts (unlike the one before us) have clearly provided that employees ineligible for vacations *with pay* must take vacations or leaves of absence *without pay* during shutdown periods, the courts of other jurisdictions are divided as to whether

those employees in the latter group are to be deemed voluntarily unemployed so as to be ineligible for unemployment compensation. Golubski v. Unemployment Compensation Board of Review, 171 Pa. Sup. 634, 91 A.2d 315, 30 A.L.R.2d 362.

1. Any agreement by a worker to waive, release, or commute his rights to benefits or any other rights under this law, or under an employment security law of any other state or of the federal government shall be void. * * * "

We hold, therefore, that the claimants are not made ineligible for unemployment benefits by reason of their individual contracts (applications) of employment, and the ruling of the Industrial Commission in this regard was proper on both the facts and the law.

■ Neither can we accept the argument of appellant that these claimants were not "available for work" or otherwise disqualified from benefits under the Employment Security Law, nor its argument that they were disqualified because they had not been unemployed "a sufficient length of time to place them in the labor market". The latter qualification sought by appellant does not appear anywhere in the Employment Security Law. Rather, the applicable provision of our Law is Section 288.030, subd. 22(1) V.A.M.S.:

"Sec. 288.030–22(1). An individual shall be deemed 'totally unemployed' in any week during which he performs no services and with respect to which no wages are payable to him."

There is no dispute but that none of the claimants performed any services or received any pay during the two week period of the plant's shutdown. Neither is there any dispute that the two week "vacation" without pay was not brought about by claimants' choice or volition, or because of their fault or incompetence, but was caused by a decision of the appellant, from which only it can benefit. During that period, the claimants were *totally* but only *temporarily* unemployed, since their jobs were again available to each of them at the end of the two week period. It is our view, and we so hold, that they qualify for benefits as totally unemployed under Section 288.030, subd. 22(1), above quoted.

■ Another section of the Law invoked by appellant provides as follows:

"Sec. 288.040–1(2). Unemployed workers eligible for benefits, when

1. A claimant who is unemployed and has been determined to be an insured worker shall be eligible for benefits for any week only if the deputy finds that

\*        \*        \*        \*        \*        \*

(2) He is able to work and is available for work; provided, however, that no person shall be deemed available for work unless he has been and is actively and earnestly seeking work;

\*        \*        \* "

In this regard, it is admitted that the claimants were physically and mentally able to work, but were unemployed by reason of the facts above related; there is no proof that suitable work was available or offered to any of them during the period, and each intended to return to his job for the appellant and, in fact, did return.

It was pointed out in Producers Produce Company v. Industrial Commission of Missouri, Mo.Sup. en Banc, 291 S.W.2d 166, 177, that the term "available for work" is not defined in the Employment Security Law and the court in Producers adopted the view expressed in the earlier case of Wiley v. Carroll, Mo.Sup., 201 S.W.2d 320, 321, wherein the court said that it was neither necessary nor desirable to attempt an inflexible definition of that term. In Producers, the court said, l. c. 177:

" \* \* \* Availability differs upon the peculiar facts in each case and no set of rules can be made to cover the variety of circumstances that may be presented in individual cases. \* \* \* "

The claimants were available for work and their failure to work was solely because the employer (appellant) furnished no work. It is not unreasonable to conclude, and we so hold, that the claimants herein were available for work within the

meaning of the law at their old and customary jobs, and the fact that they intended to return to those jobs did not disqualify them from the benefits sought.

We have been cited many cases from other jurisdictions by counsel for all parties, and those cases have been carefully reviewed. Due to the fact that cases of this nature invariably involve different and changing facts and circumstances, that each individual claim or group of claims varies from the other, and the types of statutes involved in the various states are not uniform but frequently divergent, we do not consider the authorities from other jurisdictions decisive of this matter. Indeed, there is persuasive authority from our own courts in the case of Combustion Engineering, Inc. v. O'Connor, Mo.App., 395 S.W.2d 528.

That decision, which the court noted was one of first impression in this state upheld the Industrial Commission in allowing unemployment compensation to claimants in a situation very like the one before us. In Combustion, the union contract contained provisions covering vacations, but in a memorandum of interpretation, agreed to by the union representatives and the company but never executed, the company could announce a period of shutdown for plant maintenance and advise its employees that they had the option of taking the two week period as time off without pay or schedule his vacation "in accordance with present practice". Presumably, the employees could take a paid vacation during the shutdown period.

The plant was shut down by the company for a two week period in July. The case arose by reason of a group of employees making claim for unemployment compensation for that period. The company resisted these claims and the Commission found that none of the employees had asked for vacation during those weeks and none had received pay for those weeks. The claims were allowed, the allowance af-firmed by the Circuit Court, and the St. Louis Court of Appeals.

The company claimed that the employees were not "unemployed through no fault of their own" as that phrase is used in Section 288.020 V.A.M.S. and that they were not "totally unemployed" as that term is used in Section 288.030, subd. 22(1) V.A.M.S.

The St. Louis Court of Appeals in a very convincing opinion rejected both of those contentions.

In disposing of the "fault" defense, the court adopted the definition of that term as decided in Bussmann Mfg. Co. v. Industrial Commission, Mo.App., 335 S.W.2d 456, wherein the court said "fault" as used in Section 288.020 V.A.M.S. meant a "failure or volition" and then stated in Combustion, supra, l. c. 532:

"* * * The only action these claimants took of their own volition was that which they had a perfect right to take under the labor contract; i. e., not take their vacations during the weeks ending July 13 and July 20. Their unemployment does not result from that act but from the action of the Company in closing down the plant for those two weeks for its own benefit. * * *"

In contrast with the situation in Combustion, the claimants here were even further removed from the fault or volition concept than those in Combustion, because here, they had no choice or option which would protect their earnings and avoid the loss thereof.

In regard to the defense in Combustion that the claimants were not "totally unemployed", the court pointed out that vacation pay was to be considered as "wages" under Section 288.036 V.A.M.S. for the purpose of determining eligibility for unemployment compensation and that, therefore, the claimants fell into two classes.

The first class consisted of those claimant-employees who had received paid vaca-

tions prior to the shutdown period and said, l. c. 533:

" * * * There were no weeks with respect to which vacation pay was payable to them. Obviously these claimants were 'totally unemployed' for the weeks ending July 13 and July 20 and were entitled to compensation."

The second class consisted of those claimant-employees who had not taken their vacation prior to the shutdown and had not requested vacations during the shutdown. As to this group, the court said, l. c. 533:

" * * * Vacation pay does not become payable until the employee requests his vacation for a designated period. It follows that there was no vacation pay payable to the claimants in this group with respect to the shut down period and they were 'totally unemployed' for those two weeks."

We conclude that the decision in Combustion is sound authority from a distinguished Missouri court for the position we take in the case before us. The claimants here had no volition to exercise, no options to take, and no paid vacations available to absorb their financial loss occasioned by the shutdown. Their affinity with the status of unemployed-compensable workers was much closer than either class of claimants in Combustion. Their right to invoke the protection of public policy as expressed by the legislature in the Employment Security Law was much greater than the claimants in Combustion.

For the reasons herein expressed, the judgment of the Circuit Court affirming the decision of the Industrial Commission is affirmed.

All concur.